Otis Junior MOORE, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–00–135–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 23, 2001.

Rehearing Overruled Sept. 20, 2001.

**534**

Richard Alley, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Steven W. Conder, Ben Leonard, and Elizabeth Berry, Asst. Crim. Dist., Fort Worth, for State.

PANEL A: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

WALKER, Justice.

### INTRODUCTION

A jury convicted appellant Otis Junior Moore, Jr., of burglary of a habitation with the intent to commit indecency with a child. At the punishment phase of trial, the jury found an enhancement paragraph true.[1] The trial court then assessed a mandatory life sentence in accordance with Texas Penal Code section 12.42(c)(2). TEX. PENAL CODE ANN. § 12.42(c)(2) (Vernon Supp.2001). In eight points on appeal, appellant contends that the trial court erred by granting the State's challenges for cause to five veniremembers and by permitting the State to amend the indictment at trial, that the evidence is factually insufficient to support his conviction, and that penal code section 12.42(c)(2) is unconstitutional. We will affirm.

### BACKGROUND FACTS

At trial, A.H. testified that she was babysitting her two cousins at her aunt's house on Van Natta Street in Fort Worth on February 15, 1998. She identified appellant as "Buddy" and said she went to Buddy's house, two doors down, to borrow a pair of scissors. Later, appellant came to the door of her aunt's house and asked for the scissors. A.H. handed the scissors to appellant and tried to shut the door.

At that point, appellant grabbed A.H.'s arm, pulled her outside, and said, "Swear to God you won't tell nobody." A.H. said, "Tell nobody what?" Appellant then said, "Can we get together sometime?" A.H. said, "What? I'm 11 years old." A.H. interpreted appellant's statement to mean that he wanted sex. She could smell liquor on appellant's breath and knew he was drunk.

A.H. tricked appellant into looking another direction so she could get back into the house and close the door. Appellant stumbled, and A.H. opened the door and entered the house. Before she could close the door, appellant "put his foot in the door." A.H. slammed the door hard against appellant's leg four times. When appellant moved his leg, she slammed the door shut and locked it. A.H. then closed and locked all the windows and the back door.

About five minutes later, appellant started beating on the front door and windows of the house and demanding that A.H.

---

**1.** The enhancement count of the indictment charged that prior to the commission of the primary offense, appellant was finally convicted of the felony offense of indecency with a child and named the court, cause number, and date of the alleged prior conviction.

open the door. A.H. got a butcher knife out of a kitchen drawer and took the children she was babysitting to a back room and locked the door to the room. She called the police and her grandmother and waited in the hallway.

A.H. testified that appellant had not previously said "anything to [her] in a sexual manner," but did say he "would stare a lot." She was aware that appellant had been shot and injured several months before the incident. A.H.'s version of the events at trial substantially coincided with a written statement she gave to police shortly after the incident. Appellant did not testify.

## CHALLENGES FOR CAUSE

In points one through five, appellant contends the trial court reversibly erred in granting, over his objection, the State's challenges for cause to five veniremembers. The State challenged for cause veniremembers one, five, eight, thirty-six, and thirty-eight on the basis that they were predisposed to give less credibility to witnesses under the age of eighteen.[2] After individual questioning, the trial court granted all five of the State's challenges. Appellant contends these veniremembers were not shown to be "absolutely disqualified." He asserts that "[t]he inability of the prospective jurors to treat child testimony like that of an adult is not a basis for a challenge for cause" and that the State improperly attempted "to bind the jurors and secure their agreement concerning how to view a certain class of ... evidence." Appellant further contends that the effect of granting the State's challenges for cause "was to grant the State [five] extra peremptory challenges improperly" and to deny him a qualified juror for his trial. The State, on the other hand,

argues that the trial court properly sustained the State's challenges for cause to these five veniremembers because they would "automatically grant a child witness less credibility based on age alone."

◼ A trial court's decision regarding a challenge for cause will not be disturbed absent an abuse of discretion. *Staley v. State*, 887 S.W.2d 885, 893 (Tex.Crim.App. 1994), *cert. denied*, 514 U.S. 1020, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995); *Williams v. State*, 773 S.W.2d 525, 536 (Tex.Crim.App. 1988), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989); *Ferguson v. State*, 927 S.W.2d 251, 253 (Tex.App.— Fort Worth 1996, pet. ref'd). Because the trial court is able to gauge a veniremember's sincerity and demeanor, we give great deference to the trial court's decision concerning a challenge for cause. *Butler v. State*, 872 S.W.2d 227, 234 (Tex.Crim. App.1994), *cert. denied*, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *Pyles v. State*, 755 S.W.2d 98, 106 (Tex.Crim. App.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). Therefore, to show error in the trial court's grant of the State's challenges for cause, an appellant must show either that the trial court applied the wrong legal standard in sustaining the challenge or that the trial court abused its discretion in applying the correct legal standard. *Ladd v. State*, 3 S.W.3d 547, 562 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000); *Jones v. State*, 982 S.W.2d 386, 388–89 (Tex.Crim.App.1998), *cert. denied*, 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999). We must uphold the trial court's decision if it was correct under any theory of law applicable to the case, even if the trial court gave an incor-

---

**2.** The State also challenged veniremember number four on this basis, but withdrew the challenge after individual voir dire of that potential juror.

rect reason for its decision. *Jones*, 982 S.W.2d at 389.

■ A venireman is challengeable for cause under code of criminal procedure article 35.16(a)(9) if he cannot impartially judge the credibility of witnesses. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (Vernon 1989); *Ladd*, 3 S.W.3d at 560. However, this means only that jurors must be open-minded and persuadable, with no extreme or absolute positions regarding the credibility of any witness. *Ladd*, 3 S.W.3d at 560. Veniremembers are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility, for the reason that "[c]omplete impartiality cannot be realized as long as human beings are called upon to be jurors." *Id.* (holding trial court properly denied challenge for cause based on veniremember's tendency to believe policemen and doctors slightly more than other witnesses); *Jones*, 982 S.W.2d at 389 (holding trial court erred in granting State's challenge for cause simply because veniremember stated she would be more skeptical of accomplice witnesses than of witnesses generally).

The record reflects that the five venirepersons struck based on the State's challenges for cause all stated that they would not give a child witness's testimony the same degree of credibility as an adult witness's testimony. The struck venirepersons agreed that "as a group of people," "people under the age of 18 .... would simply *start off as less credible* as far as you're concerned by virtue of that fact and that fact alone."

We recently addressed the issue of challenges for cause based on a venireperson's bias or prejudice concerning the testimony of a child witness in *Garza v. State*, 18 S.W.3d 813, 820–21 (Tex.App.—Fort Worth 2000, pet. ref'd). In *Garza*, the prosecutor asked:

And maybe because of someone's life experience, because they have children or they don't have children, they think, you know what, any kid, any child, if their head isn't above this railing when they walk in here, I am not going to believe a word they say. Is there anybody that feels that way?

Or maybe just because they are a child, a little person, under this height, that you know what, if you bring somebody in shorter than this-let's say a particular age, or under seven, under seven, I'm sorry, I can't believe them.

*Id.* at 820. We held that the prosecutor's inquiry was proper and that a potential juror who *could not believe* a witness simply because the witness was a child was properly excused for cause. *Id.* (citing *Perez v. State*, 960 S.W.2d 84, 88 (Tex. App.—Austin 1997, no pet.) and *Davis v. State*, 894 S.W.2d 471, 474 (Tex.App.— Fort Worth 1995, no pet.)).

■ Here, the prosecutor did not inquire whether the veniremembers "*could not believe* a witness" based on the witness's age. [Emphasis added.] Instead, the prosecutor's questioning of the challenged veniremembers focused on whether a child witness *starts out with a little less credibility* than an adult witness. Veniremembers are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility. *Ladd*, 3 S.W.3d at 560; *Jones*, 982 S.W.2d at 389. However, two of the veniremembers challenged for cause by the State, number eight, Bounds, and number thirty-eight, Branscum, not only expressed the view that a child witness starts out with a little less credibility, but went on to express an extreme or absolute position regarding the credibility of child witnesses.

Veniremember Bounds stated during individual voir dire that a child witness started out with less credibility than an adult witness and indicated that he would wait and hear what the child had to say. He then stated, "but I've probably already made the decision in my mind." Veniremember Branscum said during individual voir dire that she would automatically give a child witness less credibility than an adult witness and explained that she worked in day cares and "I can see that in one aspect, the majority of it, they will lie to get their way." Thus, the record reflects that veniremembers Bounds and Branscum were not genuinely open-minded and persuadable concerning testimony by a child witness and expressed entrenched positions concerning the unbelievability of child witnesses. We therefore hold that the trial court did not abuse its discretion in sustaining the State's challenges for cause to veniremembers Bounds and Branscum. We overrule appellant's first and fourth points.

■ Veniremembers one, five, and thirty-six, Beavan, Pollard, and Cox, each expressed only a slight tendency to give a child witness less credibility than an adult witness. Veniremember Beavan stated during individual voir dire that the age of a witness would not automatically disqualify him as a person who could tell the truth and indicated that age was only a factor to consider in determining credibility. Veniremember Pollard explained that she would not automatically disbelieve a child witness and indicated she could be fair and keep an open mind regardless of the age of a witness. Veniremember Cox said that he was "absolutely" willing to listen to a child's testimony before coming to a conclusion as to whether or not the child was telling the truth. Veniremember Cox said he recognized that a child could sometimes be manipulated but explained, "I'm not

saying I'm predisposed to that beforehand ... I'm just saying it's a possibility. It's a variable in the situation." The record reflects that Veniremembers Beavan, Pollard, and Cox demonstrated they would be genuinely open-minded and persuadable and that they expressed no extreme or absolute positions regarding the credibility of child witnesses. Veniremembers Beavan, Pollard, and Cox expressed no more than a tendency to give non-child witnesses slightly more credibility. Because veniremembers are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility, we hold that the trial court abused its discretion by granting the State's challenges for cause to veniremembers Beavan, Pollard, and Cox. *See Jones,* 982 S.W.2d at 389.

The State relies upon *Robinson v. State,* 985 S.W.2d 584 (Tex.App.—Texarkana 1998, pet. ref'd) and *Decker v. State,* 894 S.W.2d 475 (Tex.App.—Austin 1995, pet. ref'd) to argue that the trial court did not abuse its discretion in granting all of the State's challenges for cause. In both of these cases, however, the challenged veniremember expressed a position contrary to the law. In *Robinson,* the prospective juror explained that he would "have to have some sort of physical or tangible evidence" in order to return a verdict of guilty in a sexual assault of a child case. *Robinson,* 985 S.W.2d at 587–88. In *Decker,* the prospective juror indicated that he could not vote to convict a person of sexual assault in the absence of physical evidence of abuse. *Decker,* 894 S.W.2d at 477. The prospective juror agreed with the prosecutor that even if the State proved its case to him beyond a reasonable doubt through testimony alone, he would nonetheless require that the State go one step further and bring him physical evidence, such as through a doctor's testimony. *Id.*

The facts before us are distinguishable. Veniremembers Beavan, Pollard, and Cox did not express an opinion contrary to the law or indicate they would require the State to prove more than the law required. *Robinson* and *Decker* are therefore not applicable to the present facts. Rather, the present facts fall squarely within *Jones*. 982 S.W.2d at 389. Just as the court of criminal appeals in *Jones* held that the trial court erred in granting the State's challenge for cause simply because a veniremember stated she would be more skeptical of accomplice witnesses than of witnesses generally, so we must hold that the trial court erred in granting the State's challenges for cause to veniremembers Beavan, Pollard, and Cox simply because they indicated they would be more skeptical of child witnesses than of adult witnesses generally.

■■■■ We next address whether this error requires reversal of appellant's conviction. We disregard trial court error in granting a State's challenge for cause unless it affected appellant's substantial rights. TEX.R.APP. P. 44.2(b); *Jones*, 982 S.W.2d at 392. The trial court's erroneous ruling excusing a veniremember will call for reversal only if the error deprived the defendant of a lawfully constituted jury. *Id.* at 394. That is, a defendant has no right, constitutional or statutory, to have a particular individual serve on his jury. *Johnson v. State*, 43 S.W.3d 1, 6–7 (Tex. Crim.App.2001); *Jones*, 982 S.W.2d at 393. A defendant's rights are affected by those veniremembers who actually serve on the jury, not by those who are excused from service. *Johnson*, 43 S.W.3d at 6–7. A defendant's only substantial right in this context, therefore, is that the jurors who do serve be qualified. *Jones*, 982 S.W.2d at 393. Thus, an appellant must argue and the record must demonstrate that the error deprived him of a fair and impartial jury. *Ladd*, 3 S.W.3d at 562; *Brooks v. State*, 990 S.W.2d 278, 289 (Tex.Crim. App.), *cert. denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999); *Jones*, 982 S.W.2d at 391–92. If the jurors who serve are qualified, then the jury is lawfully constituted, a defendant's substantial rights are not affected, and reversal of a defendant's conviction based on trial court error in erroneously granting the State's challenges for cause is not required. *Jones*, 982 S.W.2d at 394.

There has been no showing, and the record in this case does not reflect, that the error in excusing Veniremembers Beavan, Pollard, and Cox for cause deprived appellant of a lawfully constituted jury. Indeed, our research has not revealed a single post-*Jones* case holding that the erroneous grant of a State's challenge for cause requires reversal. Therefore, pursuant to the dictates of *Jones*, we overrule appellant's second, third, and fifth points.

## FACTUAL SUFFICIENCY OF EVIDENCE

■■■■ In appellant's sixth point, he contends that the evidence is factually insufficient to support his conviction. He argues that there is no evidence to establish his intent to commit any kind of sexual offense.

■■■■ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine wheth-

er a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

A person commits burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony. TEX. PENAL CODE ANN. § 30.02(a)(1). The indictment alleged that appellant entered the house with the intent to commit indecency with a child, a felony offense. *Id.* § 21.11(a), (c). A person commits indecency with a child if he engages in sexual contact with the child. *Id.* § 21.11(a)(1).

The jury is exclusively empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the defendant entered. *McGee v. State,* 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.). Thus, intent may be inferred from the defendant's conduct and surrounding circumstances. *Id.* Further, where the charge is burglary with an intent to commit a felony, the offense is complete whether the intended felony is committed, as long as the burglarious entry is made with the intent to commit the felony alleged. *Jimenez v. State,* 804 S.W.2d 334, 341 (Tex.App.—San Antonio 1991, pet. ref'd).

The State called two witnesses, A.H. and her grandmother. As outlined above, A.H. testified that appellant grabbed her arm,

pulled her out onto the porch, and, after asking her to "swear to God not to tell" anybody, asked her if they could "get together sometime." A.H. understood this as solicitation of sex. Appellant tried to prevent A.H. from reentering the house and placed his foot inside the door. About five minutes later, appellant began beating on the door and attempting to gain entrance to the house.

A.H.'s grandmother testified that A.H. phoned her from her aunt's house. A.H. asked her grandmother to come pick her up because "some white man" was trying to break in the house. When A.H.'s grandmother arrived, police were already there.

The defense called one witness, Fort Worth Police Officer C.M. Jacoby. Officer Jacoby testified that she was sent to the Van Natta house after A.H. called the police. The defense requested that she read to the jury the following excerpt from her report of the incident:

> The complainant stated that Buddy said to her "Can we get together?" The complainant said she became scared and pushed the door shut. She said Buddy then put his foot in the doorway to prevent it from closing and told her not to tell anyone that he was asking her this question. The complainant said she screamed and closed the door completely.

Defense counsel cross-examined Officer Jacoby concerning the differences between the information in her report and A.H.'s trial testimony, such as A.H. not telling Officer Jacoby that Buddy grabbed her arm, that Buddy stumbled on the porch, that she closed the door on Buddy's knee four times, or that she obtained a butcher knife from the kitchen. The State then offered, and the trial court admitted, Officer Jacoby's entire report into evidence.

Officer Jacoby read the report to the jury. It indicated that she went to "Buddy's" house and asked to speak with him. After being informed of the nature of Officer Jacoby's call, Buddy became "angry and started saying profanities." He became abusive and told Officer Jacoby he had been arrested previously for something he did not do. When she asked if he had been arrested for a sex crime, he continued to shout profanities and denied being at the Van Natta house. Finally, when he realized he was going to be arrested, appellant said he would tell the truth and explained that he went to the Van Natta home to check on the kids. He later told Officer Jacoby he was at the door of a friend's house and only said hello to a black female as he walked by the house. He told Officer Jacoby he asked the black female, "Hey, you want to marry me." He said he always greets women like that and does not mean anything by it.

Viewing all of the evidence in a neutral light, we cannot conclude that the evidence supporting appellant's guilt of the offense of burglary of a habitation with the intent to commit indecency with a child is so weak as to render the jury's verdict clearly wrong and manifestly unjust or that the verdict is against the great weight and preponderance of the evidence at trial. In support of his argument, appellant argues that the "impeached testimony" of A.H. shows, at best, a simple assault in connection with a criminal trespass. However, it was the jury's role as fact finder to resolve any discrepancies or inconsistencies in the evidence, determine the credibility and weight to be given the evidence, and draw reasonable inferences from the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982) (op. on reh'g); *Thornton v. State*, 994 S.W.2d 845, 850 (Tex.App.—Fort Worth 1999, pet. ref'd). Assuming the jury chose to believe

A.H.'s version of events, the jury could have reasonably inferred from appellant's actions and words that he entered the house, by placing his foot in the door, with the intent to engage in sexual contact with A.H. Thus, we hold that the evidence is factually sufficient to support appellant's conviction. We overrule appellant's sixth point.

## CONSTITUTIONAL CHALLENGES TO MANDATORY LIFE SENTENCE

In his seventh point, appellant contends that the mandatory life sentence required under section 12.42(c)(2) of the penal code is unconstitutional. The statute provides that a defendant convicted of burglary of a habitation with the intent to commit indecency with a child who has been previously convicted of indecency with a child shall be punished by life imprisonment. TEX. PENAL CODE ANN. § 12.42(c)(2)(A)(iii), (B)(ii).

The enhancement paragraph in the indictment alleged that appellant had been previously convicted of indecency with a child by contact on May 22, 1989. During the punishment phase of trial, the State introduced evidence of the previous conviction, and the jury returned a finding of "true" to the enhancement paragraph. As required by section 12.42(c)(2), the trial court assessed a life sentence. Appellant argues that the statutory life sentence constitutes cruel and unusual punishment and violates the separation of powers requirement, violates his due process rights, and violates the prohibition against ex post facto laws.

### 1. Cruel and Unusual Punishment and Disproportionate Sentence

■ Appellant contends that penal code section 12.42(c)(2)'s mandatory life sentence constitutes cruel and unusual punishment because it is disproportionate

to the crime, the judge is statutorily required to impose it without taking into account the particularized circumstances of the crime and of the individual offender, and it precludes the jury from considering evidence in mitigation of punishment. Appellant provides no argument or authority suggesting a distinction between the Eighth Amendment's prohibition against "cruel and unusual" punishment and the Texas Constitution's ban on "cruel or unusual" punishment. *See Moore v. State,* 935 S.W.2d 124, 128 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1219, 117 S.Ct. 1711, 137 L.Ed.2d 835 (1997). Thus, we address his federal and state constitutional claims together.

■ The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII; *see also* TEX. CONST. art. I, § 13. The length of a criminal sentence is purely a matter of legislative prerogative. *Harmelin v. Michigan,* 501 U.S. 957, 962, 111 S.Ct. 2680, 2684, 115 L.Ed.2d 836 (1991); *State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 104 (Tex.Crim.App.1973). Texas has long held that punishments falling within the prescribed statutory limitations are not cruel and unusual within the meaning of the Texas Constitution. *See, e.g., Harris v. State,* 656 S.W.2d 481, 486 (Tex.Crim.App.1983); *Price v. State,* 35 S.W.3d 136, 144 (Tex.App.—Waco 2000, pet. ref'd) (op. on reh'g). Moreover, the fact that a certain non-death-penalty punishment is mandatory, and thereby precludes consideration of mitigation evidence, does not automatically render the punishment cruel and unusual. *See Price,* 35 S.W.3d at 144 (holding mandatory life sentence imposed pursuant to penal code section 12.42(c)(2) was not cruel and unusual punishment under Eighth Amendment); *Bridgewater v. State,* 905 S.W.2d 349, 355 (Tex.App.—Fort Worth 1995, no pet.) (holding mandatory life sentence in capital case where State waives death penalty is not cruel and unusual). Because the life sentence required by penal code section 12.42(c)(2) is authorized by statute, its mandatory imposition without regard to mitigation evidence does not per se constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Price,* 35 S.W.3d. at 143–44.

■ Appellant also argues that his sentence is disproportionate to his crime. Much confusion exists concerning whether the Eighth Amendment contains a proportionality guarantee prohibiting sentences that are grossly disproportionate to the offense. In 1983, in *Solem v. Helm,* the United States Supreme Court affirmatively held that the Eighth Amendment prohibited "disproportionate" prison sentences. 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983) (recognizing that "[t]he final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed"). In *Solem,* the Supreme Court set aside, as violative of the Eighth Amendment, a sentence of life imprisonment without the possibility of parole imposed under a South Dakota recidivist statute. *Id.* at 303, 103 S.Ct. at 3016–17. The Supreme Court identified three criteria to be used to evaluate the proportionality of a particular sentence. *Id.* at 292, 103 S.Ct. at 3011. They are "the gravity of the offense and the harshness of the penalty; ... the sentences imposed on other criminals in the same jurisdiction; and ... the sentences imposed for commission of the same crime in other jurisdictions." *Id.*

In 1991, in *Harmelin,* the Supreme Court called into question the continued viability of *Solem.* With four justices dissenting, the majority held that a mandato-

ry life sentence imposed on a defendant for possessing more than 650 grams of cocaine did not violate the Eighth Amendment. *Harmelin,* 501 U.S. at 957, 111 S.Ct. at 2680. The Court was divided, however, concerning the basis for this holding. Justice Scalia, joined by Chief Justice Rehnquist, addressed the appellant's proportionality argument by holding that *Solem* was "simply wrong" and argued that the Eighth Amendment contains no proportionality guarantee in the non-death-penalty context. *Id.* at 965, 111 S.Ct. at 2686 (Scalia, J., joined by Rehnquist, C.J., in an opinion). Justices Kennedy, joined by Justices O'Connor and Souter, concurred and reasoned that indeed the Eighth Amendment did encompass "a narrow proportionality principle" that "applies to non-capital sentences." *Id.* at 997, 111 S.Ct. at 2702–03 (Kennedy, J., joined by O'Connor & Souter, JJ., concurring in part, concurring in judgment).

Left to decipher whether, in the wake of *Harmelin,* the Eighth Amendment did or did not prohibit disproportionate sentences in a non-death-penalty context, the Fifth Circuit concluded that "disproportionality survives; *Solem* does not." *McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992). The Fifth Circuit applied a modified *Solem* test adopted by Justice Kennedy in *Harmelin. Id.* That is, the court initially made a threshold comparison of the gravity of the offense against the severity of the sentence. *Id.* Only upon a determination that the sentence is grossly disproportionate to the offense would the court consider the remaining *Solem* factors. *Id.*

The majority of the Texas appellate courts have followed and applied the Fifth Circuit's *McGruder* analysis in addressing Eighth Amendment proportionality complaints. *Bradfield v. State,* 42 S.W.3d 350,

353 (Tex.App.—Eastland 2001, pet. ref'd); *Hicks v.. State,* 15 S.W.3d 626, 632 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Dunn v. State,* 997 S.W.2d 885, 891–92 (Tex.App.—Waco 1999, pet. ref'd); *Jackson v. State,* 989 S.W.2d 842, 845 (Tex. App.—Texarkana 1999, no pet.); *Mathews v. State,* 918 S.W.2d 666, 669 (Tex.App.—Beaumont 1996, pet. ref'd); *Puga v. State,* 916 S.W.2d 547, 549–50 (Tex.App.—San Antonio 1996, no pet.); *Lackey v. State,* 881 S.W.2d 418, 421 (Tex.App.—Dallas 1994, pet. ref'd). We also adopt the *McGruder* proportionality analysis.

We first make a threshold comparison of the gravity of the offense against the severity of the sentence. *Solem,* 463 U.S. at 291–92, 103 S.Ct. at 3010; *McGruder,* 954 F.2d at 316. We are to judge the gravity of the offense in light of the harm caused or threatened to the victim or society, and the culpability of the offender. *Solem,* 463 U.S. at 291–92, 103 S.Ct.at 3010.

Here, a jury found appellant guilty of burglary of a habitation with the intent to commit indecency with a child. Burglary of a habitation with the intent to commit a felony is a first degree felony offense. Tex. Penal Code Ann. § 30.02(d). Thus, the offense committed by appellant is classified as within the second most serious category of offenses in Texas, capital offenses being the most serious. The harm threatened to the victim and to society is great, violence perpetrated by an intruder in one's home. Appellant's culpability, as determined by the jury, is likewise serious. The jury found that appellant entered the habitation with the intent to commit indecency with a child. Thus, the jury determined that appellant possessed a high degree of culpability. *See Solem,* 463 U.S. at 291–92, 103 S.Ct. at 3010 (discussing culpability continuum).

The jury also found that appellant had been previously convicted of indecency with a child. Appellant's mandatory life sentence was imposed to reflect the seriousness of his most recent offense, not as it stands alone, but in light of his prior offense. *See McGruder,* 954 F.2d at 316. We note that the offense of burglary of a habitation with the intent to commit indecency with a child is punishable by imprisonment for life, i.e., 99 years. TEX. PENAL CODE ANN. §§ 12.32(a), 21.11(c), 30.02(d) (Vernon 1994 & Supp.2001). Thus, punishment for appellant's most recent offense, even standing alone, could have been assessed at life imprisonment. Because the mandatory life sentence imposed by the trial court pursuant to penal code section 12.42(c)(2) is within the range of punishment assessable for appellant's most recent offense, without viewing it in light of his prior offense, we cannot say that appellant's punishment is disproportionate to his offense. Comparing the gravity of appellant's offense to the severity of his sentence, we hold that appellant's sentence is not grossly disproportionate in violation of the Eighth Amendment.

## 2. Separation of Powers

 Appellant also contends his mandatory punishment violates the separation of powers clause of the Texas Constitution because it is beyond the power of the legislature to mandate a punishment regardless of any mitigating factors that may be present in an individual case. TEX. CONST. art. II, § 1. The separation of powers provision provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy ... and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted.

*Id.* This provision is violated when one branch of government assumes or is delegated a power that is more "properly attached" to another branch or when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Armadillo Bail Bonds v. State,* 802 S.W.2d 237, 239 (Tex.Crim.App. 1990).

Appellant proposes that section 12.42(c)(2) infringes upon or unduly interferes with the rightful role of the judiciary in assessing punishment in a criminal case by mandating a specific result without consideration of mitigating evidence. However, as previously noted, the authority to define crimes and prescribe penalties for those crimes is vested exclusively with the legislature. *Matchett v. State,* 941 S.W.2d 922, 932 (Tex.Crim.App.1996), *cert. denied,* 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997); *Blackwell,* 500 S.W.2d at 104. It is thus within the power vested in the legislature to determine that the penalty should be life imprisonment where a defendant is convicted of burglary of a habitation with intent to commit a sexual offense and has been previously convicted of a felony sexual offense. Appellant offers no explanation of how the legislature's enactment of penal code section 12.42(c)(2), mandating a set, non-death-penalty punishment without regard to mitigation evidence, constitutes an assumption of power that is delegated to the judicial branch or impedes the judicial branch's effective exercise of its constitutionally assigned powers. We hold that penal code section 12.42(c)(2) does not violate the Texas Constitution's separation of powers provision.

## 3. Due Process

Appellant further contends that penal code section 12.42(c)(2)'s mandatory life sentence violates his right to due process and due course of law because it precludes consideration by the jury of mitigating evidence. U.S. Const. amend. XIV; Tex. Const. art. I, §§ 10, 19. A defendant in a criminal case has no constitutional right to have the jury assess his punishment. *Ex parte Moser*, 602 S.W.2d 530, 533 (Tex.Crim.App.1980), *overruled on other grounds by Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985); *Allen v. State*, 552 S.W.2d 843, 847 (Tex. Crim.App.1977); *Prater v. State*, 903 S.W.2d 57, 60 (Tex.App.—Fort Worth 1995, no pet.). He may have a statutory right to have the jury assess his punishment. Tex.Code Crim. Proc. Ann. art. 37.07, § 2(b) (Vernon Supp.2001). The legislature, however, having created a statutory right to have the jury assess punishment, may alter or abolish the procedure it created within the bounds of due process and other constitutional strictures. *Moser*, 602 S.W.2d at 533; *Prater*, 903 S.W.2d at 60. Thus, we disagree with appellant's position that he possesses a due process right to have the jury consider mitigation evidence at punishment in a non-death-penalty case.

The Tyler Court of Appeals has specifically rejected the due process challenge to penal code section 12.42(c)(2) presented by appellant. *Williams v. State*, 10 S.W.3d 370, 372–73 (Tex.App.—Tyler 1999, pet. ref'd). The court explained:

> Constitutional due process demands a rational basis for legislatively created classifications creating punishment schemes for criminal offenses. *Smith v. State*, 737 S.W.2d 933, 938–39 (Tex. App.—Dallas 1987, pet. ref'd). Although a defendant must be afforded some degree of due process at sentencing, the same degree of process is not required at sentencing as at trial. *U.S.*

> *v. Rochester*, 898 F.2d 971, 981 (5th Cir. 1990). The test is whether the punishment scheme is rationally related to a legitimate state interest. *Cardona v. State*, 768 S.W.2d 823, 827 (Tex.App.— Houston [14th Dist.] 1989, no pet.).
>
> By enacting section 12.42(c)(2), the legislature mandated a life sentence for anyone who is convicted of the sexual assault of a child a second time. The legislature has an interest in removing habitual sexual predators of children from society and in protecting the children of this State. This basis is rational and sufficient for the legislature to require a mandatory life sentence for being convicted twice of sexually assaulting a child. Since the legislature created the scheme of indeterminate sentencing in criminal cases, it has the power to mandate a different sentencing scheme, within constitutional strictures, to send a clear signal to sex offenders that their conduct will not be tolerated.

*Id.* We agree with this analysis. We hold that appellant's sentence under section 12.42(c)(2) does not violate his constitutional right to due process of law. *See Williams*, 10 S.W.3d at 372–73; *see also Buhl v. State*, 960 S.W.2d 927, 935 (Tex. App.—Waco, pet.ref'd), *cert. denied*, 525 U.S. 1057, 119 S.Ct. 623, 142 L.Ed.2d 561 (1998) (holding mandatory life sentence under section 12.31(a) of the penal code does not violate due process because defendant is unable to present mitigating evidence on punishment); *Prater*, 903 S.W.2d at 60 (same).

**4. Violation of Ex Post Facto Clauses**

Finally, appellant contends that application of section 12.42(c)(2) violates the ex post facto clauses of the Texas and United States Constitutions because at the time of his initial felony conviction the

mandatory nature of the punishment for a second conviction under section 12.42(c)(2) did not exist.[3] U.S. CONST. art. I, § 10; TEX. CONST. art. I, § 16.

■ The ex post facto clause of the United States Constitution forbids "the application of any new punitive measure to a crime already consummated," thereby forbidding a retroactive increase in the length of a sentence. *Scott v. State*, 19 S.W.3d 864, 866–67 (Tex.App.—Texarkana 2000, pet. granted). Article 1, section 16 of the Texas Constitution provides, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. An ex post facto law: (1) punishes as a crime an act previously committed which was innocent when done; (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed; (3) deprives a person charged with a crime of any defense available at the time the act was committed; or (4) alters the legal rules of evidence and requires less or different evidence than the law required at the time of the commission of the offense. *Collins v. Youngblood*, 497 U.S. 37, 42–43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990); *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex.Crim.App.1994); *Ex parte Cole*, 43 S.W.3d 713, 715 (Tex.App.—Fort Worth 2001, no pet.).

■ The focus of any ex post facto inquiry is whether the change in the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable. *Cortez v. State*, 36 S.W.3d 216, 220 (Tex.App.—Houston [14th Dist.] 2001, pet. ref'd). When a court engages in ex post facto analysis, it should be concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred. *Id.*

■ Laws that increase punishment for subsequent convictions do not fall within one of the categories of ex post facto laws. *Vasquez v.. State*, 477 S.W.2d 629, 632 (Tex.Crim.App.1972); *Scott*, 19 S.W.3d at 866–67. *Scott* involved a defendant who pleaded guilty in 1991 to indecency with a child in exchange for a deferred adjudication sentence. 19 S.W.3d at 866. Subsequently, in 1998, the defendant was charged with aggravated sexual assault of a child. *Id.* at 865. A jury convicted him. *Id.* The State utilized the prior 1991 offense, for which the defendant was still on deferred adjudication community supervision, for enhancement purposes to trigger penal code section 12.42(c)(2)'s mandatory life sentence. *Id.* On appeal, the defendant pointed out that when he pleaded guilty and received deferred adjudication in 1991, that offense could not be used for enhancement purposes. He argued, therefore, that penal code section 12.42(c)(2) and (d), enacted in 1997, constituted an ex post facto law as to him because he actually received a greater punishment for the deferred adjudication offense than was attached to the offense when committed. *Id.* at 866. The Texarkana Court of Appeals, with one justice dissenting, disagreed and held that penal code section 12.42(c)(2) did not constitute an ex post facto law because the statute did not retroactively punish the defendant for his first offense, but instead merely authorized the use of an affirmative finding concerning the first offense to "en-

---

**3.** The prohibition against ex post facto laws is actually a prohibition against legislative, not judicial action. *Ex parte Bonham*, 707 S.W.2d 107, 108 (Tex.Crim.App.1986). Thus, a judicial decision having an unjust retroactive application is barred by the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution rather than by article I, section 10's ex post facto provision. *Id.*

hance the punishment for the repeated commission of that same criminal conduct." *Id.* at 867.

Here, appellant pleaded guilty in 1989 to indecency with a child and was sentenced to ten years' imprisonment. At the time of this conviction, the law permitted prior final convictions to be used for enhancement purposes. Act of May 25, 1985, 69th Leg., R.S., ch. 582, 1985 Tex. Gen. Laws 2201, 2201, (amended 1999) (current version at TEX. PENAL CODE ANN. § 12.42(c) (Vernon Supp.2001)); *compare Scott,* 19 S.W.3d at 866 (stating law at the time defendant pleaded guilty did not allow a deferred adjudication to be used as an enhancement under section 12.42(c)(2)). In this case, the change made by the Legislature between appellant's first and second convictions concerned only the punishment to be imposed for a second conviction, not the enhancement status of appellant's prior conviction. Appellant's ex post facto arguments are less persuasive than those presented in *Scott.*

Moreover, appellant's current life sentence was not imposed as punishment for his previously committed offense. Penal code section 12.42 does not authorize imposition of a life sentence *absent commission of a new offense* set forth in that section. TEX. PENAL CODE ANN. § 12.42. Thus, appellant would not have received a mandatory life sentence had he not been found guilty of committing a new offense, burglary of a habitation with the intent to commit indecency with a child, after the effective date of the 1997 amendments to the statute. We hold that penal code section 12.42 is not an unconstitutional ex post facto law as applied to appellant. We overrule appellant's seventh point.

---

4. *Eastep* may also be overruled by *Gollihar v. State,* 46 S.W.3d 243, 256 (Tex.Crim.App.

## DELETION OF LANGUAGE FROM INDICTMENT

■ In his eighth point, appellant contends that the trial court erred in permitting the State to amend the indictment on the day of trial by deleting certain language. In count one of the indictment, the State alleged that appellant entered the habitation with the intent to commit indecency with a child or aggravated sexual assault of a child or injury to a child. Prior to commencement of voir dire and without objection from defense counsel, the State moved to strike the allegations of intent to commit aggravated sexual assault of a child or injury to a child. Pursuant to the motion, the trial court deleted the language "or aggravated sexual assault of a child or injury to a child" by interlineating the face of the indictment. Appellant argues this "amendment" was improper because it diminished the State's burden of proof.

Article 28.10 of the code of criminal procedure provides that an indictment may be *amended* at any time before the date trial commences *or after trial commences if the defendant does not object.* TEX.CODE CRIM. PROC. ANN. art. 28.10(a)-(b) (Vernon 1989). The State contends article 28.10 was not invoked because the alteration was an abandonment, not an amendment.

■ An amendment is an alteration to the face of the indictment that affects the substance of the charging instrument. *Eastep v. State,* 941 S.W.2d 130, 132 (Tex. Crim.App.1997), *overruled on other grounds by Riney v. State,* 28 S.W.3d 561 (Tex.Crim.App.2000).[4] Conversely, an abandonment does not affect its substance. *Id.* There are three situations where an

2001).

alteration to the face of the charging instrument is an abandonment: (1) abandonment of one or more of the alternative means of committing an offense; (2) abandonment of an allegation if the effect is to reduce the prosecution to a lesser included offense; or (3) abandonment of surplusage. *Id.* at 135. In these situations, the requirements of article 28.10 are not invoked. *Id.*

We note that the court of criminal appeals, has "overrule[d] surplusage law." *Gollihar,* 46 S.W.3d at 256. *Gollihar*'s overruling of all surplusage law occurred in light of the court of criminal appeals' holding "that a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Id.* The issue in the present case, however, does not involve a variance between the charge and the indictment or the evidence at trial. Rather, here, the issue is whether the State's request to delete one or more of the alternative means of committing an offense from the face of the indictment triggered article 28.10's statutory protections concerning indictment amendments. Thus, we continue to apply existing law distinguishing indictment amendments from abandonments in this context.

■■■ When a statute provides multiple means for the commission of an offense and those means are subject to the same punishment, the State may plead them conjunctively. *Eastep,* 941 S.W.2d at 133. However, the State·is required to prove only one of the alleged means in order to support the conviction. *Id.; Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App. 1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). The deletion of an alternative means does not change the alleged offense, it merely limits the State to the remaining means. *Eastep,* 941 S.W.2d at 134. Because the alteration here merely deleted two of the three

alternative means of committing the charged offense, the alteration was an abandonment, not an amendment. *See Yates v. State,* 766 S.W.2d 286, 290–91 (Tex.App.—Dallas 1989, pet. ref'd); *see also Stockton v. State,* 756 S.W.2d 873, 876 (Tex.App.—Austin 1988, no pet.) (holding alteration was abandonment, not amendment). Thus, the statutory protections of article 28.10 were not triggered. *See, e.g., Bates v. State,* 15 S.W.3d 155, 161 (Tex. App.—Texarkana, pet.ref'd), *cert. denied,* 531 U.S. 1013, 121 S.Ct. 569, 148 L.Ed.2d 487 (2000).

Moreover, because appellant was already on notice of all the alleged means for the commission of the alleged offense, the abandonment of two of the alternative means did not affect his notice or his ability to prepare his defense. *See Eastep,* 941 S.W.2d at 134. Therefore, even if this interlineation of appellant's indictment could be construed as an amendment instead of an abandonment, appellant has not established that his substantial rights were prejudiced. *See* Tex.Code Crim. Proc. Ann. art. 28.10. Accordingly, we overrule appellant's eighth point.

We affirm the trial court's judgment.