COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-180-CR

 

 

RUSSELL D. BRYAN                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Russell D. Bryan
appeals his conviction by a jury of aggravated robbery with a deadly
weapon.  Appellant pled true to the repeat
offender allegation, and the State introduced evidence of his thirteen prior
convictions, nine of them for theft, eight of which involved theft of a motor
vehicle.  The jury found the repeat
offender allegation true and assessed punishment of sixty years= confinement.  The trial court
sentenced Appellant accordingly.  In two
points, Appellant challenges the legal and factual sufficiency of the evidence
to support the deadly weapon finding, and contends that the trial court erred
and abused its discretion in sustaining the State=s challenge for cause to a veniremember.  We affirm.

BACKGROUND








Christopher Lea testified
that he is employed by U.S. Security and Associates, a company that contracts
with Tom Thumb to perform loss prevention. 
On May 12, 2005, Lea was working at a Tom Thumb Food Store in Arlington
dressed in plain clothes and posing as a shopper.  He saw Appellant grab a rotisserie chicken
from the deli section of the store. 
While carrying the chicken, Appellant walked around the store for
awhile, then chose the longest checkout line, left the line before paying, and
finally exited the store without paying for the chicken.  Lea testified that Appellant looked around
nervously the entire time he was in the store. 
As Appellant passed the checkout counters and exited the store, Lea
followed him, and when Lea was four feet away from Appellant, Lea told him that
he was Aloss prevention,@ exhibited
his loss prevention badge, and asked Appellant to step inside the store.  Lea testified that Appellant dropped the
chicken, pulled out what looked like a black Glock semi-automatic gun from the
front part of his pants, pointed it in Lea=s direction, and said something to the effect of, Awhoa, man, whoa.@  Lea instantly backed away and ran from
Appellant, who got into the driver=s seat of an older white car and drove off.  Lea wrote down the car=s license plate number and gave it to the police when they arrived.

When Lea ran back into the
store, he stopped his partner, who is another loss prevention employee, Kellie
Brewer, from exiting the store by blocking her path and telling her that
Appellant had a gun.  Brewer testified
that Lea was scared when he told her this and that he seemed concerned about
his and her safety. Brewer further testified that she recognized Appellant from
an earlier incident at the same store, in which she had caught Appellant=s girlfriend shoplifting. 
Brewer stated that during that incident Appellant told her that he had a
sawed‑off shotgun in his car so Brewer backed off and allowed them to
leave.

Arlington Police Detective
Ben Lopez testified that he conducted an investigation of the aggravated
robbery, and based on the license plate number of the getaway vehicle, he
developed Appellant as a suspect, then showed Lea a photo lineup that included
Appellant=s
photo.  Lea identified Appellant as the
robber from the photo lineup, and Detective Lopez obtained a warrant for
Appellant=s
arrest.  Appellant was subsequently
arrested; no firearm was ever recovered.








Appellant testified that the
rotisserie chicken was in his hand and a box of Little Debbie=s Star Crunch was in his pants= pocket as he walked around the Tom Thumb store.  He said that when he went into the store he
knew he did not have any money to pay for these items.  Appellant stated that he stood in line and
waited until no one was around so he could walk out of the store with the
merchandise without paying. Appellant denied that he had either used or possessed
a gun in connection with the theft. 
Appellant stated that what Lea had mistaken for a gun in his pocket was
actually the box of Little Debbie Star Crunch. 
Appellant admitted to all of his past convictions and that he had been
present when his girlfriend shoplifted from the same Tom Thumb store a couple
of weeks before May 12, 2005, but he denied having threatened Brewer during
that prior incident by telling her that he was going to get a sawed-off
shotgun.

A security camera videotape
of a portion of the incident was introduced into evidence.  The quality of the image is mediocre at best
and while it does show Appellant exiting the store with what might be the
package of rotisserie chicken, immediately followed by Lea, it is impossible to
tell from the remainder of the videotape whether or not Appellant had a gun in
his pocket or pointed a gun at Lea.

 

 








DEADLY WEAPON FINDING

In his second point,
Appellant argues that the evidence is legally and factually insufficient to
sustain the jury=s finding
that Appellant used or exhibited a firearm during the commission of the
offense.

Standards Of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

Did Appellant Use Or Exhibit A Deadly
Weapon? 

A person commits robbery if,
in the course of committing a theft with the intent to obtain or maintain
control of the property, he intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death.  Tex.
Penal Code Ann. ' 29.02(a)(2)
(Vernon 2003).  A person commits
aggravated robbery if he commits robbery and uses or exhibits a deadly
weapon.  Id. ' 29.03(a)(2).








Loss prevention employee
Christopher Lea testified that he has grown up with guns and hunting, and has
shot pistols and shotguns.  Lea stated
that the gun that Appellant removed from his pocket and pointed at Lea was
black and looked like a Glock semi-automatic pistol.  Lea said that the Glock-looking pistol was a
firearm, which is a deadly weapon.

In addition to Lea=s testimony that Appellant pointed a black Glock-looking pistol at
him, Brewer testified that when she was exiting the store to go after
Appellant, Lea blocked her path and told her that Appellant had a gun.  Brewer stated that Lea was scared when he
told her this and that he seemed concerned about his and her safety.

While Appellant admitted that
he entered the store with the intention of stealing, and that when he left the
store he had stolen the chicken and the box of Little Debbie=s Star Crunch, he denied possessing or exhibiting a gun or any weapon.

A Afirearm@ means any
device designed, made, or adapted to expel a projectile through a barrel by
using the energy generated by an explosion or burning substance or any device
readily convertible to that use.  Tex. Penal Code Ann. ' 46.01(3) (Vernon 2003).  A
firearm is a deadly weapon.  Id. ' 1.07(a)(17)(A) (Vernon Supp. 2006). 
On an affirmative finding that a deadly weapon used was a firearm, the
trial court shall enter that finding in its judgment.  Tex.
Code Crim. Proc. Ann. art. 42.12, '3g (a)(2) (Vernon 2006).  








In support of his contention
that the evidence did not establish that he used a deadly weapon in the
commission of the offense, Appellant relies upon  Ward v. State, 48 S.W.3d 383 (Tex.
App.CWaco 2001, pet. ref=d).  We find the facts in Ward
inapposite to the facts in the case before us because the issue in Ward
involved the identity of the alleged robber. 
Id. at 389.  Here,
Appellant admitted committing the robbery; therefore, identity was not at
issue.    When
faced with conflicting evidence, we presume that the trier of fact resolved any
such conflict in favor of the verdict.  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999); Guy v. State, 160
S.W.3d 606, 614 (Tex. App.CFort Worth 2005, pet. ref=d).  The jury, as the
fact-finder, considered the evidence, evaluated the credibility of the
witnesses, and ultimately resolved the conflicts in the testimony against
AppellantCas it was
entitled to do.  Applying the appropriate
standards of review delineated previously, we hold that the evidence is legally
and factually sufficient to support the jury=s finding that Appellant used or exhibited a deadly weapon in the
commission of the offense.  We overrule
Appellant=s second
point.

JURY CHALLENGE








In his first point, Appellant
claims that the trial court reversibly erred and abused its discretion by
sustaining the State=s challenge
for cause to veniremember Elmore because the State did not show that Elmore was
disqualified or could not serve for the reasons set forth in the State=s challenge.  Appellant argues
that, in effect, the granting of the State=s challenge for cause Anot only erroneously denied the right of a qualified juror to serve
but also legally and practically granted the State an additional peremptory
challenge improperly thereby giving the State both a strategic and tactical
advantage over the Appellant at trial.@

The State counters that the
trial court did not abuse its discretion in granting the challenge for cause
because Elmore not only constituted a vacillating juror, but also expressed an
inability to sit in judgment.  The State
alternatively asserts that any potential error should be disregarded because
the record does not show that an unlawfully‑constituted jury resulted
from striking Elmore; therefore, Appellant was not harmed by the trial court=s action.








Article 35.16 of the Texas
Code of Criminal Procedure provides that a challenge for cause may be made by
the State if a potential juror has a bias or prejudice against any phase of the
law upon which the State is entitled to rely for conviction or punishment.  Tex.
Code Crim. Proc. Ann. art. 35.16(b)(3) (Vernon 2006).  To show error in the trial court=s grant of the State=s challenge for cause, an appellant must show either that the trial
court applied the wrong legal standard in sustaining the challenge or that the
trial court abused its discretion in applying the correct legal standard.  Ladd v. State, 3 S.W.3d 547, 562 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000).  Moreover, to obtain a reversal because of the
error, an appellant must show that the error actually deprived him of a fair
and impartial jury.  Id.

Standard Of Review

When reviewing a trial court=s decision to grant or deny a challenge for cause, we look at the
entire record to determine if there is sufficient evidence to support the court=s ruling.  Feldman v. State,
71 S.W.3d 738, 744 (Tex. Crim. App. 2002). 
We give great deference to the trial court=s decision because the trial judge is present to observe the demeanor
of the veniremember and to listen to his tone of voice.  Id. 
Particular deference is given when the potential juror=s answers are vacillating, unclear, or contradictory.  Id.; King v. State, 29 S.W.3d
556, 568 (Tex. Crim. App. 2000).

Voir Dire Of Veniremember Elmore  








During jury selection, after
one prospective juror indicated that she Acouldn=t bring
[herself] to condemn somebody to prison and incarcerate,@ and the State asked whether anyone else felt that they could not sit
in judgment on someone else, prospective juror Elmore raised her hand.  The prosecutor asked, AYou indicated that you may not be able to sit in judgment of someone
else?@  Elmore responded
affirmatively.  To confirm, the
prosecutor asked, AJust for the
record, is that a definite, definite yes? 
You wouldn=t be able to
do that?@  Elmore answered, ARight.@

Appellant=s counsel subsequently asked, AMs. Elmore, tell me your thoughts when you said you cannot sit in
judgment.@  She replied, AI don=t like to
judge people.  I don=t feel like I haveCwill have all of the information I need to feel good about making a
judgment on someone.@  Appellant=s attorney asked her AYou don=t feel like
you will have the informationCwhat?@  Elmore replied, AEnough information that I need to feel good about making a decision
like that,@ and added, AI guess it all depends on the case and what I hear.  Who the other person is that he supposedly
took something from and the motive behind it, why and the priors which is not
allowed.  And so I just don=t feel like I have everything I need in order to really assess the
situation.@  Appellant=s attorney then said, AOkay.  Now, [the Prosecutor]
told you, and I=ll tell you
now, if you do find someone guilty, then at sentencing you do get to hear if
that person has priors.  And, of course,
you would hear about the personCthe victim of the crime, the nature of the crime, how it was
committed.  If you heard all of those
things, would you be able to assess punishment?@  Elmore replied, AOkay.@








After another prospective
juror said that she did not think she would be able to consider the minimum
punishments, the prosecutor asked Elmore if she also felt that she could not
fairly participate in assessing punishment. 
Elmore replied, AI guess I
would have to wait too and hear what was said in court.@  At the conclusion of voir
dire, the State challenged Elmore for cause. 
The trial court called her up to the bench to examine her.

The prosecutor asked her, AYou had indicated at one point that you could not sit in judgment of
another individual; is that right?@  She assented.  The prosecutor continued, AAnd then later on, when the Defense lawyer asked you questions about
whether or notCyou know, if
you got some criminal history and that kind of stuff later, if it existed, if
you could sit in judgment then.  And you
gave just a one word answer.  My question
is:  Are youCwhere do you stand at this point? 
Do you feel that you justCfor personal reasons, religious or whatever, you couldn=t sit in judgment of another person? 
Is that still your belief?@








After getting further
clarification of the question, Elmore said, AI just feel uncomfortable judging other people.  I don=t like to be judged.  I know
sometimes people getCbreak the
law and do things and somebody has to judge them or decide what their
punishment is going to be, but I feel uncomfortable about doing that.  I know for me to have to judge somebody else,
I have to have a whole lot of information. 
I=m not sure I can get all of that information that I feel I would need
in order to feel good about making a decision on somebody else.@

The prosecutor once more
asked, ADo I understand you correctly . . . that at this point you might hold
us to a higher burden than what maybe the law might say in order to convince
you that someone may be guilty in a case?@ Elmore replied, AI=m saying I
have to have a lot of information.@  After further discussion, the
prosecutor asked her, A[W]ould you be
uncomfortable in judging this particular Defendant in this case based on any
facts?@  She replied, AYes.@  The prosecutor continued, AAnd because you are uncomfortable, you couldn=t sit in judgment of another person?@  She replied, AI guess it would depend on what the charge is.@

The trial court then granted
the State=s challenge
for cause.  Appellant objected to that
ruling, stating, AShe said she
was uncomfortable and it would depend on the facts.  It depends on what she heard.  I object to the Court sustaining that
challenge for cause.@

Discussion








Even assuming arguendo
that the trial court in the case at bar abused its discretion in granting the
State=s challenge for cause, this is no evidence that this error deprived
Appellant of a lawfully constituted jury. 
See Jones v. State, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998), cert.
denied, 528 U.S. 985 (1999).  We
disregard trial court error in granting a State=s challenge for cause unless it affected Appellant=s substantial rights.  See
Tex. R. App. P. 44.2(b); Jones,
982 S.W.2d at 391-92; Moore v. State, 54 S.W.3d 529, 538 (Tex. App.CFort Worth 2001, pet. ref=d).  The trial court=s erroneous ruling excusing a veniremember will call for reversal only
if the error deprived the defendant of a lawfully constituted jury.  Jones, 982 S.W.2d at 394.  That is, a defendant has no right,
constitutional or statutory, to have a particular individual serve on his
jury.  Id. at 393; Moore,
54 S.W.3d at 538.  A defendant=s rights are affected by those veniremembers who actually serve on the
jury, not by those who are excused from service.  Moore, 54 S.W.3d at 538.  A defendant=s only substantial right in this context, therefore, is that the
jurors who do serve be qualified.  Jones,
982 S.W.2d at 393.








Thus, an appellant must argue
and the record must demonstrate that the error deprived him of a fair and
impartial jury.  Salazar v. State, 38
S.W.3d 141, 153 (Tex. Crim. App.), cert. denied, 534 U.S. 855 (2001); Ladd,
3 S.W.3d at 562; Brooks v. State, 990 S.W.2d 278, 289 (Tex. Crim. App.
2001), cert. denied, 528 U.S. 956 (1999).  If the jurors who serve are qualified, then
the jury is lawfully constituted, a defendant=s substantial rights are not affected, and reversal of a defendant=s conviction based on trial court error in erroneously granting the
State=s challenge for cause is not required. 
Moore, 54 S.W.3d at 538.

The record in the instant
case does not show that the granting of the challenge for cause as to
veniremember Elmore deprived Appellant of a lawfully constituted jury.  There is no indication that the jurors who
actually served at Appellant=s trial were biased, interested, or otherwise disqualified from
serving on the jury.  Therefore, we
overrule Appellant=s first
point.  See Feldman, 71 S.W.3d at
749 (holding that even assuming the trial court erred in granting State=s challenge for cause, appellant did not show the error deprived him
of a lawfully constituted jury).

                                           CONCLUSION   

Having overruled both of
Appellant=s points, we
affirm the judgment of the trial court.

 

PER CURIAM

 

PANEL F: 
HOLMAN, GARDNER, and WALKER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 31, 2007

 











[1]See Tex. R.
App. P. 47.4.