COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
DWAYNE LEE ROBERTS,                               )                  No. 08-03-00408-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  238th District Court
)
THE STATE OF TEXAS,                                   )                  of Midland County, Texas
)
                                    Appellee.                          )                  (TC# CR27515)

O P I N I O N

            Dwayne Lee Roberts appeals his conviction for burglary of a habitation with intent to commit
assault. Appellant was found guilty and sentenced to seven years in the Texas Department of
Criminal Justice. We affirm.
FACTUAL SUMMARY
            At one time, Appellant and Natasha Glover were involved in a romantic relationship which
resulted in the birth of a son. The nature of the relationship on the night of the offense was hotly
disputed. Glover testified that the relationship ended on December 31, 2001. Appellant denied that
Glover ever broke up with him and claimed she was still his girlfriend even though he was married
to another woman. He had been with Glover on March 1, 2002, and she purportedly told him to call
her that evening. He called around 7 p.m. to ask about their son. Glover told him the child was with
his godparents. Appellant continued to call during the night, but Glover did not answer the phone. 
Appellant knew she was seeing someone else and later that evening, he decided to go over to her
apartment.
            In the early morning hours of March 2, Glover was in her apartment with her boyfriend,
Jermaine Samuels. Appellant started knocking on the door. He testified that he put his key in the
lock but could not get the door open since the deadbolt was also locked. According to Glover,
Appellant did not have a key. Appellant heard the television in the background and called out
Glover’s name several times. When the television was turned off, he began to knock harder. He
claimed to be concerned that something was wrong when Glover did not open the door. 
            Glover looked through the peephole while Samuels was in the bathroom running a bath. 
Glover went to tell him Appellant was at the door and that he should go into the back room. 
Appellant was yelling for Glover to open the door and let him in. The knocking then became louder
and progressed to beating. Glover called the police from the master bedroom while Samuels went
into the master bathroom. They heard the front door fly open and hit the wall with a bang. 
Appellant admitted that he broke through the door. He entered the apartment without Glover’s
consent, and Glover asked him to leave more than once. 
            Appellant began searching through the closets and cabinets and yelling “where is he” along
with certain profanities. He found Samuels in the bathroom and started swinging. Appellant
claimed that Samuels jumped out of the shower and started swinging at him. The fight continued
into the master bedroom, out into the hallway, into the hallway bathroom, and finally into the living
room. Samuels was feeling weak due to a loss of blood from a cut on his wrist. Appellant told him
to leave and Samuels refused. When Appellant heard sirens, he left the apartment. 
            Officer Aaron Smith was dispatched to the scene on a disturbance call. He first came into
contact with Samuels, who was covered in blood, had visible cuts, and something wrapped around
his arm. The officer saw that parts of the door jamb were broken off and laying on the floor. He had
no doubt that the door was forced open. He obtained a physical description of Appellant and learned
he had fled the scene in a light-colored four-door Pontiac. Smith called in a description and told
other officers to be on the lookout. Samuels was taken to the hospital by ambulance.
            Officer Lorenzo Dominguez received the lookout and description of Appellant and the car. 
He passed by a vehicle matching the description and made a U-turn to follow it. The vehicle stopped
and Appellant exited the car. Dominguez saw blood on his shirt and face. Appellant told him that
he had been in a fight at an apartment complex. As he was transported to jail, Appellant told
Dominguez that he had been to the apartment and that Samuels opened the door but would not let
him inside. Since Appellant believed that his girlfriend was cheating on him, he pushed passed
Samuels. He claimed that Samuels hit him first and he hit back in self defense. 
            Appellant testified that he helped Glover move into the apartment and had purchased
furniture for it. He had moved all of his personal effects and lived there from “day one.” He
admitted that the lease was not in his name since the complex was owned by the housing authority,
but he had gone down to the office and “sign[ed] . . . in black and white” that he lived there. He also
helped Glover with rent and bills. His sister testified that Appellant lived at the apartment with
Glover. The mother of three of his children testified that she took the children over to the apartment
to spend time with Glover and Appellant during January and February 2002. 
SUFFICIENCY OF THE EVIDENCE
            In Point of Error One, Appellant challenges the sufficiency of the evidence to support his
conviction for burglary with intent to commit assault because the State failed to prove that he entered
the apartment with an improper motive.
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).
            The Court of Criminal Appeals clarified this factual sufficiency standard of review in Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004) providing there is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a
jury rationally justified in finding guilt beyond a reasonable doubt? However, the court found two
ways in which the evidence may be insufficient: (1) when considered by itself, evidence supporting
the verdict may be too weak to support the finding of guilt beyond a reasonable doubt, and (2) there
may be both evidence supporting the verdict and evidence contrary to the verdict. Id. at 485. Thus,
weighing all the evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should
not stand. Id. This standard acknowledges that evidence of guilt can “preponderate” in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Id. Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard. Id. 
Burglary
            A person commits the offense of burglary of a habitation if, without the effective consent of
the owner, the person enters a building or habitation and commits or attempts to commit a felony,
theft, or an assault. Tex.Penal Code Ann. § 30.02(a)(3)(Vernon 2003). Here, Appellant was
charged with burglary with intent to commit assault. Assault occurs when a person intentionally or
knowingly threatens another with imminent bodily injury. Tex.Penal Code Ann. § 22.01 (Vernon
Supp. 2004-05). Consent means assent in fact. Tex.Penal Code Ann. § 1.07(11)(Vernon Supp.
2004-05). Consent is not effective if induced by force, threat, or fraud. Id. at § 1.07(19a).
            Intent is a fact question for the trier of fact, and it may be inferred from the acts, words, and
conduct of the accused. Manrique v. State, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999); Wallace
v. State, 52 S.W.3d 231, 234 (Tex.App.--El Paso 2001, no pet.). As a result of its nature, mental
culpability must generally be inferred from the circumstances under which a prohibited act or
omission occurs. Hernandez v. State, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991); Wallace, 52
S.W.3d at 235. The intent to commit a felony, assault or theft must exist at the time of and
accompany the entry into the habitation. Coleman v. State, 832 S.W.2d 409, 413 (Tex.App.--Houston [1st Dist.] 1992, pet. ref’d). If the intent relied upon by the State is formed after the entry,
the crime of burglary has not been shown. Id. The jury is exclusively empowered to determine
whether the defendant had the intent to commit assault when he entered the habitation, and the jury
may infer the defendant’s intent from the events of the burglary. See Moore v. State, 54 S.W.3d 529,
539 (Tex.App.--Fort Worth 2001, pet. ref’d). 
Analysis
            Examining the evidence in a light most favorable to the verdict, we conclude that a rational
trier of fact could have found the essential elements of burglary with intent to commit assault beyond
a reasonable doubt. It was within the province of the jury to fairly resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. The jury
obviously believed Glover’s testimony that the apartment was solely hers, that Appellant did not live
there, and that he entered that evening without her consent. Further, the jury could reasonably infer
an intent to commit assault from Appellant’s relentless beating on the door and yelling for Glover
to let him in. Appellant freely admitted that he broke through the door. He began searching for a
man and yelling profanities. When he found Samuels in the bathroom, Appellant assaulted him. 
Consequently, the evidence was legally sufficient to sustain Appellant’s conviction.
            Viewing the evidence in a neutral light, we cannot conclude that it is so weak that it would
be clearly wrong and manifestly unjust to allow the verdict to stand or that the finding of guilt was
against the great weight and preponderance of the available evidence. The fact finder is the judge
of the credibility of the witnesses and may believe all, some, or none of the testimony. The jury
obviously chose to disbelieve Appellant’s testimony that his intent was not to commit assault but to
check on the safety of Glover and the children. The jury could have examined Appellant’s actions
in knocking and yelling through the door, his eventual breaking through the door, and his searching
for Samuels as proof of his intent to commit assault. The evidence is factually sufficient to support
the conviction. We overrule Point of Error One.
PROSECUTORIAL MISCONDUCT
            In Points of Error Two and Three, Appellant complains of remarks made by the prosecutor
during closing argument. In the second point, he argues that the following was manifestly improper:
You ought to know one other thing, too. Common sense ought to tell you one other
thing. That wasn’t his apartment. Think to yourself, if somebody broke into your
house, would you run away? Maybe you would run away if you’re afraid of them,
but what would you do? Would you call the police? You bet you would. You
wouldn’t just let some interloper go in your house and just take control over it. You
would call the police.
 
This Defendant didn’t do that. He ran like the dog that he was. He was trying to get
away from there because he knew he wasn’t supposed to be there. He knew that he
broke into that apartment without consent. [Emphasis added].

In his third point, he contends that the following comments were intended to strike at him over the
shoulder of his attorney: 
Mr. Roosa tells you ‘I believe.’ Well, of course, what I believe and what Mr. Roosa
believes has nothing to do with this case. It’s what you determine the evidence to be
from having heard it all. 

            Proper jury argument falls into four specific categories: (1) summation of the evidence, (2)
reasonable deduction from the evidence, (3) answer to argument by opposing counsel, and (4) plea
for law enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973); Van Zandt
v. State, 932 S.W.2d 88, 92 (Tex.App.--El Paso 1996, pet. ref’d). Our rules of procedure require that
a contemporaneous objection be made to preserve error. Tex.R.App. P. 33.1. This rule applies to
complaints of improper jury argument. Mathis v. State, 67 S.W.3d 918, 927-28 (Tex.Crim.App.
2002); see Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App.1996), cert. denied, 520 U.S. 1173,
117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). Appellant did not object to the State’s arguments. Because
Appellant failed to preserve error, we overrule Points of Error Two and Three and affirm the
judgment of the trial court.


June 23, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)