COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-526-CR

 

 

BOBBY H. BOUCHELLE                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Bobby H. Bouchelle appeals his
conviction for burglary of a habitation with intent to commit aggravated
assault with a deadly weapon.[2]  A jury found Bouchelle guilty of one count of
burglary of a habitation with intent to commit aggravated assault with a deadly
weapon and two counts of aggravated assault, and it assessed his punishment at
sixty years= confinement and a $9,005.83
fine.  The trial court sentenced him
accordingly.  In three points, Bouchelle
contends that the evidence is legally and factually insufficient and that the
trial court erred by overruling his motion for mistrial.  We will affirm.

II.  Factual and Procedural Background

Patricia Burgess is Bouchelle=s
ex-girlfriend and ex-business partner in a mowing business.[3]  Burgess and Bouchelle jointly owned a bush
hog tractor that they used in their mowing business.  After they broke up, Bouchelle kept the
tractor on his property.  








On July 4, 2003, Burgess, her long-time friend
Tammie Henderson, and Henderson=s date,
Clifford Cogdill, attended several Fourth of July cookouts. The three returned
to Burgess=s house that night, and
Henderson=s younger brother, Thomas Selby,
and his girlfriend came over.  Dennis
Simmons was renting a room in Burgess=s home
at the time, and he was already asleep in his room when Burgess and the others
arrived.  Around one o=clock in
the morning, Selby and his girlfriend went to bed in Burgess=s third
bedroom, Burgess went to her room, and Henderson and Cogdill fell asleep on the
couches in the living room.  








Around 4:30 in the morning, Henderson awoke to a Arustling
noise@ in
Burgess=s
kitchen.  She saw the shadow of a large
man, and within seconds, the man hit her over the head with what she said Afelt
like a pipe.@ 
She sat up, saw that the man was Bouchelle, and asked, ABobby,
what are you doing?@ Bouchelle again struck her with
the same object, which Henderson later learned was an axe handle.  Bouchelle was wearing Ablack
from head to toe,@ a dark watch cap pulled down
over his forehead, and a cut-off sleeve over his mouth and nose.  Cogdill, who had been sleeping on the other
couch, stood up, but Bouchelle struck him with the axe handle, knocking Cogdill
to the floor. Henderson ran to Simmons=s room
for help, but Bouchelle followed her and knocked out Simmons with the axe
handle as well.  Henderson then ran into
the hall near the bathroom, and Bouchelle began attacking her with a knife.
Bouchelle smelled strongly of diesel and tequila, and he told Henderson, ABitch,
you got to die.@ 
After receiving several deep cuts and stabs, Henderson managed to get
the knife away from Bouchelle and to throw it in the bathroom sink.  Selby, who awoke to Henderson=s
screaming, came out of the third bedroom and struggled with Bouchelle.  During the struggle, Bouchelle=s watch
cap and the sleeve over his face came off. 
Selby knocked Bouchelle to the floor, got the axe handle away from him,
and hit Bouchelle several times before Bouchelle crawled out of the house.  In the meantime, Selby=s
girlfriend called 911.  After Bouchelle
left the house, Selby and his girlfriend saw a small white car drive off from
behind Burgess=s barn.  








Police and an ambulance arrived at Burgess=s house
shortly thereafter. Henderson, Simmons, and Cogdill were taken to the hospital
to be treated for their injuries.  Around
five o=clock in
the morning, Deputy Larry Beuchaw was dispatched to the scene, and while en
route, he saw a white four-door vehicleCwhich
matched the description he had been given of the perpetrator=s
vehicleCturn off
its lights after it passed another patrol car traveling in front of Deputy
Beuchaw.  The deputy followed the car
into a private drive and initiated a stop of the vehicle.  As the deputy approached the vehicle, he
noticed that the driver was Aseverely
injured@ and
bleeding from the back of his head. Deputy Beuchaw asked for identification,
and the driver, Bouchelle, produced his Texas driver=s
license.  When asked what had happened,
Bouchelle explained that he had fallen down an embankment at Wal-Mart while
changing a tire.  Bouchelle handed the
deputy a Wal-Mart receipt, which showed that he purchased a filet knife, four
packages of panties, and a flashlight at 4:03 that morning.  The deputy then received notification by
radio that the suspect had been identified as Bouchelle, and the deputy placed
Bouchelle under arrest.  At the time of
his arrest, Bouchelle was wearing an empty knife sheath duct-taped to his
suspenders, and the soles and toes of his shoes were covered in red duct
tape.   








At trial, Bouchelle did not dispute that he was
at Burgess=s house on July 5th but instead
presented a defensive theory that Burgess invited him to her home on July 4th
because she and her friends planned to attack Bouchelle once he arrived.  Gary Wells testified that he was Bouchelle=s
roommate and that a few months prior to July 4th, the bush hog tractor that
Bouchelle jointly owned with Burgess Awent
missing@ from
Bouchelle=s property.  Wells testified that he and Bouchelle kept a
notepad on their front door for people to leave notes on and that on July 4th,
he and Bouchelle found a note on their front door from Burgess asking Bouchelle
to stop by her house to discuss the tractor. 
On cross examination, Wells testified that the last time he saw the
note, it was on the kitchen counter and that Bouchelle never mentioned it
again.  Craig Lambert testified that in
June, he was in a local bar when he overheard Burgess and her friend, Joyesa
Youngblood, discussing how Bouchelle=s
tractor was missing.  He then heard
Joyessa tell Burgess, AWell, we=ll just
have to kill him.@ 
Lambert also testified that he went to same bar later that month and
again overheard Burgess and Youngblood talking about killing Bouchelle.  Lambert said, AThey was
planning a Fourth of July party, and they said, >We=ll just
do it then,= and, >We=ll invite
Bobby over, and we=ll just do it then.=@  Later on in his testimony, Lambert said that
he heard Burgess and Youngblood say Selby Awas
going to do it.@ 


III.  Legal and Factual Sufficiency








In his first and second points, Bouchelle argues
that the evidence is legally and factually insufficient to support his
conviction for burglary of a habitation with intent to commit aggravated
assault with a deadly weapon. Specifically, Bouchelle argues that he could not
have committed the offense as charged in the indictment because Burgess invited
him to her home on July 4th in order for her and her friends to attack him.[4]  Thus, Bouchelle challenges two elements of
the offenseCthat he did not have Burgess=s
effective consent and that he had the requisite intent when he entered Burgess=s house.

A. 
Standards of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Ortiz v. State,
993 S.W.2d 892, 895 (Tex. App.CFort
Worth 1999, no pet.).  Such a charge
would be one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953
S.W.2d at 240.  The law as authorized by
the indictment means the statutory elements of the charged offense as modified
by the charging instrument.  See Curry,
30 S.W.3d at 404.

In determining the legal sufficiency of the
evidence to show appellant's intent, and faced with a record that supports
conflicting inferences, we Amust
presumeCeven if
it does not affirmatively appear in the recordCthat the
trier of fact resolved any such conflict in favor of the prosecution, and must
defer to that resolution.@ 
Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).








In contrast, when reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis
standard acknowledges that evidence of guilt can >preponderate= in
favor of conviction but still be insufficient to prove the elements of the
crime beyond a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.  









In performing a factual sufficiency review, we
are to give deference to the fact finder=s
determinations, including determinations involving the credibility and demeanor
of witnesses.  Id. at 481; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency review requires an
examination of all the evidence.  Id.
at 484, 486-87.  An opinion addressing
factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. 
Sufficiency of Evidence 

A person commits an offense if, without the
effective consent of the owner, he enters a habitation with intent to commit a
felony.  Tex. Penal Code Ann. '
30.02(a)(1) (Vernon 2003).  The
indictment alleged that Bouchelle entered Burgess=s home
with intent to commit aggravated assault with a deadly weapon, a felony
offense.  Id. '
22.02(b) (Vernon Supp. 2005).  

The jury is exclusively empowered to determine
the issue of intent, and the events of a burglary may imply the intent with
which the defendant entered. Moreno v. State, 702 S.W.2d 636, 641 (Tex.
Crim. App. 1986); Moore v. State, 54 S.W.3d 529, 539 (Tex. App.CFort
Worth 2001, pet. ref=d).  Thus, intent may be inferred from the
defendant's conduct and surrounding circumstances.  Moore, 54 S.W.3d at 539. 













Here, Burgess=s
roommate, Simmons, testified that he did not give Bouchelle consent to enter
the home.  Henderson testified that
Bouchelle was not invited to Burgess=s home
and that Bouchelle entered the home without knocking and while everyone in the
house was asleep.  The evidence further
showed that Bouchelle did not go to Burgess=s house
until after four o=clock in the morning on July
5th, after everyone in the house was asleep; that he was wearing a disguise;
and that he parked behind Burgess=s barn,
where his car could not be seen from the road or the house.  Henderson testified that Bouchelle attacked
her while she was asleep on the couch and that he said, ABitch,
you got to die.@ 
When Deputy Beuchaw stopped Bouchelle, Bouchelle did not tell him that
he had been attacked at Burgess=s house;
he instead said that he fell at Wal-Mart. 
The soles of Bouchelle=s shoes
were covered in duct tape, which the State alleged at trial was used to make
footprints untraceable.      Although Wells testified that he saw a note
from Burgess asking Bouchelle to stop by her house, the defense did not produce
the note and did not offer any reason why it could not produce the note.  Wells=s
testimony is also inconsistent with Henderson=s
testimony that Bouchelle was not invited to Burgess=s house
on July 4th.  Lambert=s
testimony that he overheard Burgess and Youngblood planning to kill Bouchelle
is inconsistent with Youngblood=s
testimony that she and Burgess never discussed killing Bouchelle.  Under the appropriate standards of review, we
are to give deference to the fact finder's determinations, including
determinations involving the credibility and demeanor of witnesses; we cannot
sit as a thirteenth juror, and we may not substitute our judgment for that of
the fact finder's.  Zuniga, 144
S.W.3d at 481‑82. Accordingly,
viewing all of the evidence in the light most favorable to the verdict, we hold
that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt, including that Bouchelle lacked consent to
enter Burgess=s home and that he intended to
commit the felony offense of aggravated assault with a deadly weapon.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Hampton, 165 S.W.3d at 693. 
Moreover,  viewing all the
evidence in a neutral light, favoring neither party, we hold that the jury was
rationally justified in finding guilt beyond a reasonable doubt; the evidence
supporting the verdict is not too weak to support the finding of guilt beyond a
reasonable doubt, and the contrary evidence is not so strong that the
beyond-a-reasonable-doubt standard could not have been met.  Zuniga, 144 S.W.3d at 484-85.  We overrule Bouchelle=s first
and second points.

IV.  Denial of Mistrial








In his third point, Bouchelle argues that the
trial court erred by denying his motion for mistrial after the trial court
sustained his objection to and instructed the jury to disregard a statement
made by the State during its case-in-chief.   


During the State=s
case-in-chief, the State called Wayne Loomis, a Wal-Mart loss prevention
officer and camera technician, to testify regarding a surveillance videotape he
compiled from the Wal-Mart that Bouchelle visited on July 5th.  The State introduced the videotape and
several still pictures that Loomis had made from the videotape.  Based on what he viewed on the videotape,
Loomis explained the relevance of each still photograph.  The following exchange took place between the
State and Loomis:

[The State:]  State=s Exhibit 55, what B do you know what=s going on?

 

[Loomis:]  Yes, sir.  That=s when the transaction receipt was being handed
back to the gentleman.

 

[The State:]  To the Defendant
or to the individual in black?

 

[Loomis:]  To the individual in
the picture, yes, sir.  [Emphasis added.]

 








Defense counsel objected that the question was leading, and the trial
court sustained the objection.  Defense
counsel then asked for an instruction that the jury disregard the State=s
comment, and the trial court so instructed the jury.  Defense counsel moved for a mistrial, which
the trial court denied.  Based on the
foregoing, Bouchelle argues that the trial court=s
instruction to the jury to disregard the complained-of comment was insufficient
to cure the alleged error because the comment was Aextremely
prejudicial and was not removed from the minds of the jury.@ 

The asking of an improper question, by itself,
will seldom call for a mistrial.  Moore v. State, 882 S.W.2d 844, 847 (Tex.
Crim. App. 1994), cert. denied, 513 U.S. 1114 (1995).  A trial court should grant a mistrial only in
extreme cases when the question was so prejudicial as to appear calculated to
inflame the minds of the jury members and was of such a character as to suggest
the impossibility of withdrawing the impression from the jurors' minds.  Id.; see also Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000).  When the trial court sustains an
objection and instructs the jury to disregard but denies a defendant=s motion
for mistrial, the issue is whether the trial court abused its discretion by
denying the mistrial.  See Hawkins v.
State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Primes v. State,
154 S.W.3d 813, 814 (Tex. App.CFort
Worth 2004, no pet.).  The determination
of whether such an abuse of discretion occurred is made by examining (1) the
severity of the alleged misconduct, (2) the curative measures that were taken,
and (3) the certainty of conviction absent the improper question.  Hawkins, 135 S.W.3d at 77.  Otherwise, an instruction to disregard
generally suffices.  Primes, 154
S.W.3d at 815. 








Here, the State=s
leading question implied that Bouchelle was the man in the picture who took the
receipt from the Wal-Mart cashier.  We
cannot conclude that the State=s
question was Aso prejudicial that expenditure
of further time and expense would be wasteful and futile.@  See Hawkins, 135 S.W.3d at 77.  The witness answered the question before
defense counsel objected, and the witness did not implicate Bouchelle, but
instead answered that Athe individual in the picture@
received the receipt.  The jury had
already heard Deputy Beuchaw=s
testimony that Bouchelle told him he was returning from Wal-Mart when the
deputy stopped him.  Immediately before
Loomis=s
testimony, the State called the executive vice-president and cashier of
Community Bank, where Bouchelle has a checking account, to testify to Bouchelle=s debit
card transactions on the morning of July 5th. 
The State introduced Bouchelle=s
account statements, which showed a debit card purchase from Wal-Mart at 4:03 on
the morning of July 5th.  Bouchelle=s
roommate later testified that Bouchelle was the man in the photographs.  The trial court took measures to cure any
error by granting Bouchelle=s
objection and instructing the jury to disregard the comment.  Finally, Bouchelle=s
conviction was not based on the State=s
allegedly improper question; the fact that Bouchelle went to Wal-Mart in the
early morning hours of July 5th was only a small part of the large volume of
evidence supporting Bouchelle=s
conviction. 








Accordingly, we hold that the trial court=s
instruction to the jury to disregard the prosecutor=s
allegedly improper question cured any resulting prejudicial effect and that the
trial court did not abuse its discretion by denying Bouchelle=s
request for a mistrial.  See Hawkins,
135 S.W.3d at 77.  We overrule Bouchelle=s third
point.

V.  Conclusion

Having overruled Bouchelle=s three
points, we affirm the trial court=s
judgment.

PER
CURIAM

 

PANEL F:    WALKER, GARDNER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: January 26,
2006

 

 











[1]See Tex. R. App. P. 47.4.





[2]Bouchelle was charged
with burglary of a habitation with intent to commit aggravated assault with a
deadly weapon (Count One), burglary of a habitation with intent to commit
assault (Count Two), and two counts of aggravated assault.  The State later waived Count Two.  





[3]Burgess did not testify
at the guilt-innocence phase of the trial; but the record from the punishment
stage reveals the following facts. Bouchelle and Burgess lived together for a
year and a half.  Initially, the two were
just roommates, but the relationship quickly turned romantic.  In December 2002, Burgess decided to end the
relationship after she and Bouchelle got into an argument one night that
resulted in Bouchelle pushing her onto the bed and choking her.  After Burgess moved into her own place,
Bouchelle continued to contact her, and, according to Burgess, he harassed her
on at least two occasions.  





[4]Bouchelle also contends
in his brief that he knew Henderson stole his brush hog tractor, that he only Aarmed himself in case
there was a confrontation with Ms. Burgess and her drunk friends,@ and that he knew Burgess
wanted to kill him or have him killed. 
The record however does not support these claims.  Because these factual contentions are outside
the record, we may not consider them.  See
Jack v. State, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004).