COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-180-CR

RUSSELL D. BRYAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Russell D. Bryan appeals his conviction by a jury of aggravated robbery with a deadly weapon.  Appellant pled true to the repeat offender allegation, and the State introduced evidence of his thirteen prior convictions, nine of them for theft, eight of which involved theft of a motor vehicle.  The jury found the repeat offender allegation true and assessed punishment of sixty years’ confinement.  The trial court sentenced Appellant accordingly.  In two points, Appellant challenges the legal and factual sufficiency of the evidence to support the deadly weapon finding, and contends that the trial court erred and abused its discretion in sustaining the State’s challenge for cause to a veniremember.  We affirm.

BACKGROUND

Christopher Lea testified that he is employed by U.S. Security and Associates, a company that contracts with Tom Thumb to perform loss prevention.  On May 12, 2005, Lea was working at a Tom Thumb Food Store in Arlington dressed in plain clothes and posing as a shopper.  He saw Appellant grab a rotisserie chicken from the deli section of the store.  While carrying the chicken, Appellant walked around the store for awhile, then chose the longest checkout line, left the line before paying, and finally exited the store without paying for the chicken.  Lea testified that Appellant looked around nervously the entire time he was in the store.  As Appellant passed the checkout counters and exited the store, Lea followed him, and when Lea was four feet away from Appellant, Lea told him that he was “loss prevention,” exhibited his loss prevention badge, and asked Appellant to step inside the store.  Lea testified that Appellant dropped the chicken, pulled out what looked like a black Glock semi-automatic gun from the front part of his pants, pointed it in Lea’s direction, and said something to the effect of, “whoa, man, whoa.”  Lea instantly backed away and ran from Appellant, who got into the driver’s seat of an older white car and drove off.  Lea wrote down the car’s license plate number and gave it to the police when they arrived.

When Lea ran back into the store, he stopped his partner, who is another loss prevention employee, Kellie Brewer, from exiting the store by blocking her path and telling her that Appellant had a gun.  Brewer testified that Lea was scared when he told her this and that he seemed concerned about his and her safety. Brewer further testified that she recognized Appellant from an earlier incident at the same store, in which she had caught Appellant’s girlfriend shoplifting.  Brewer stated that during that incident Appellant told her that he had a sawed-off shotgun in his car so Brewer backed off and allowed them to leave.

Arlington Police Detective Ben Lopez testified that he conducted an investigation of the aggravated robbery, and based on the license plate number of the getaway vehicle, he developed Appellant as a suspect, then showed Lea a photo lineup that included Appellant’s photo.  Lea identified Appellant as the robber from the photo lineup, and Detective Lopez obtained a warrant for Appellant’s arrest.  Appellant was subsequently arrested; no firearm was ever recovered.

Appellant testified that the rotisserie chicken was in his hand and a box of Little Debbie’s Star Crunch was in his pants’ pocket as he walked around the Tom Thumb store.  He said that when he went into the store he knew he did not have any money to pay for these items.  Appellant stated that he stood in line and waited until no one was around so he could walk out of the store with the merchandise without paying. Appellant denied that he had either used or possessed a gun in connection with the theft.  Appellant stated that what Lea had mistaken for a gun in his pocket was actually the box of Little Debbie Star Crunch.  Appellant admitted to all of his past convictions and that he had been present when his girlfriend shoplifted from the same Tom Thumb store a couple of weeks before May 12, 2005, but he denied having threatened Brewer during that prior incident by telling her that he was going to get a sawed-off shotgun.

A security camera videotape of a portion of the incident was introduced into evidence.  The quality of the image is mediocre at best and while it does show Appellant exiting the store with what might be the package of rotisserie chicken, immediately followed by Lea, it is impossible to tell from the remainder of the videotape whether or not Appellant had a gun in his pocket or pointed a gun at Lea.

DEADLY WEAPON FINDING

In his second point, Appellant argues that the evidence is legally and factually insufficient to sustain the jury’s finding that Appellant used or exhibited a firearm during the commission of the offense.

Standards Of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”
 
 Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

Did Appellant Use Or Exhibit A Deadly Weapon?
 

A person commits robbery if, in the course of committing a theft with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  
Tex. Penal Code Ann.
 § 29.02(a)(2) (Vernon 2003).  A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon.  
Id
. § 29.03(a)(2).

Loss prevention employee Christopher Lea testified that he has grown up with guns and hunting, and has shot pistols and shotguns.  Lea stated that the gun that Appellant removed from his pocket and pointed at Lea was black and looked like a Glock semi-automatic pistol.  Lea said that the Glock-looking pistol was a firearm, which is a deadly weapon.

In addition to Lea’s testimony that Appellant pointed a black Glock-looking pistol at him, Brewer testified that when she was exiting the store to go after Appellant, Lea blocked her path and told her that Appellant had a gun.  Brewer stated that Lea was scared when he told her this and that he seemed concerned about his and her safety.

While Appellant admitted that he entered the store with the intention of stealing, and that when he left the store he had stolen the chicken and the box of Little Debbie’s Star Crunch, he denied possessing or exhibiting a gun or any weapon.

A “firearm” means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use.  
Tex. Penal Code Ann.
 § 46.01(3) (Vernon 2003).  A firearm is a deadly weapon.  
Id.
 
§ 1.07(a)(17)(A) (Vernon Supp. 2006).
  On an affirmative finding that a deadly weapon used was a firearm, the trial court shall enter that finding in its judgment.  
Tex. Code Crim. Proc. Ann.
 art. 42.12, §3g (a)(2) (Vernon 2006).  

In support of his contention that the evidence did not establish that he used a deadly weapon in the commission of the offense, Appellant relies upon  
Ward v. State
, 48 S.W.3d 383 (Tex. App.—Waco 2001, pet. ref’d).  We find the facts in 
Ward
 inapposite to the facts in the case before us because the issue in 
Ward
 involved the identity of the alleged robber.  
Id.
 at 389.  Here, Appellant admitted committing the robbery; therefore, identity was not at issue.   When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the verdict.
 
 Fuentes v. State
, 991 S.W.2d 267, 271 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999); 
Guy v. State, 
160 S.W.3d 606, 614 (Tex. App.—Fort Worth 2005, pet. ref’d).
  The jury, as the fact-finder, considered the evidence, evaluated the credibility of the witnesses, and ultimately resolved the conflicts in the testimony against Appellant—as it was entitled to do.  Applying the appropriate standards of review delineated previously, we hold that the evidence is legally and factually sufficient to support the jury’s finding that Appellant used or exhibited a deadly weapon in the commission of the offense.  We overrule Appellant’s second point.

JURY CHALLENGE

In his first point, Appellant claims that the trial court reversibly erred and abused its discretion by sustaining the State’s challenge for cause to veniremember Elmore because the State did not show that Elmore was disqualified or could not serve for the reasons set forth in the State’s challenge.  Appellant argues that, in effect, the granting of the State’s challenge for cause “not only erroneously denied the right of a qualified juror to serve but also legally and practically granted the State an additional peremptory challenge improperly thereby giving the State both a strategic and tactical advantage over the Appellant at trial.”

The State counters that the trial court did not abuse its discretion in granting the challenge for cause because Elmore not only constituted a vacillating juror, but also expressed an inability to sit in judgment.  The State alternatively asserts that any potential error should be disregarded because the record does not show that an unlawfully-constituted jury resulted from striking Elmore; therefore, Appellant was not harmed by the trial court’s action.

Article 35.16 of the Texas Code of Criminal Procedure provides that a challenge for cause may be made by the State if a potential juror has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment.  
Tex. Code Crim. Proc. Ann.
 art. 35.16(b)(3) (Vernon 2006).  To show error in the trial court’s grant of the State’s challenge for cause, an appellant must show either that the trial court applied the wrong legal standard in sustaining the challenge or that the trial court abused its discretion in applying the correct legal standard.  
Ladd v. State
, 3 S.W.3d 547, 562 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  Moreover, to obtain a reversal because of the error, an appellant must show that the error actually deprived him of a fair and impartial jury.  
Id.

Standard Of Review

When reviewing a trial court’s decision to grant or deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the court’s ruling.  
Feldman v. State
, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).  We give great deference to the trial court’s decision because the trial judge is present to observe the demeanor of the veniremember and to listen to his tone of voice.  
Id.
  Particular deference is given when the potential juror’s answers are vacillating, unclear, or contradictory.  
Id.
; 
King v. State
, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000).

Voir Dire Of Veniremember Elmore
 

During jury selection, after one prospective juror indicated that she “couldn’t bring [herself] to condemn somebody to prison and incarcerate,” and the State asked whether anyone else felt that they could not sit in judgment on someone else, prospective juror Elmore raised her hand.  The prosecutor asked, “You indicated that you may not be able to sit in judgment of someone else?”  Elmore responded affirmatively.  To confirm, the prosecutor asked, “Just for the record, is that a definite, definite yes?  You wouldn’t be able to do that?”  Elmore answered, “Right.”

Appellant’s counsel subsequently asked, “Ms. Elmore, tell me your thoughts when you said you cannot sit in judgment.”  She replied, “I don’t like to judge people.  I don’t feel like I have—will have all of the information I need to feel good about making a judgment on someone.”  Appellant’s attorney asked her “You don’t feel like you will have the information—what?”  Elmore replied, “Enough information that I need to feel good about making a decision like that,” and added, “I guess it all depends on the case and what I hear.  Who the other person is that he supposedly took something from and the motive behind it, why and the priors which is not allowed.  And so I just don’t feel like I have everything I need in order to really assess the situation.”  Appellant’s attorney then said, “Okay.  Now, [the Prosecutor] told you, and I’ll tell you now, if you do find someone guilty, then at sentencing you do get to hear if that person has priors.  And, of course, you would hear about the person—the victim of the crime, the nature of the crime, how it was committed.  If you heard all of those things, would you be able to assess punishment?”  Elmore replied, “Okay.”

After another prospective juror said that she did not think she would be able to consider the minimum punishments, the prosecutor asked Elmore if she also felt that she could not fairly participate in assessing punishment.  Elmore replied, “I guess I would have to wait too and hear what was said in court.”  At the conclusion of voir dire, the State challenged Elmore for cause.  The trial court called her up to the bench to examine her.

The prosecutor asked her, “You had indicated at one point that you could not sit in judgment of another individual; is that right?”  She assented.  The prosecutor continued, “And then later on, when the Defense lawyer asked you questions about whether or not—you know, if you got some criminal history and that kind of stuff later, if it existed, if you could sit in judgment then.  And you gave just a one word answer.  My question is:  Are you—where do you stand at this point?  Do you feel that you just—for personal reasons, religious or whatever, you couldn’t sit in judgment of another person?  Is that still your belief?”

After getting further clarification of the question, Elmore said, “I just feel uncomfortable judging other people.  I don’t like to be judged.  I know sometimes people get—break the law and do things and somebody has to judge them or decide what their punishment is going to be, but I feel uncomfortable about doing that.  I know for me to have to judge somebody else, I have to have a whole lot of information.  I’m not sure I can get all of that information that I feel I would need in order to feel good about making a decision on somebody else.”

The prosecutor once more asked, “Do I understand you correctly . . . that at this point you might hold us to a higher burden than what maybe the law might say in order to convince you that someone may be guilty in a case?” Elmore replied, “I’m saying I have to have a lot of information.”  After further discussion, the prosecutor asked her, “[W]ould you be uncomfortable in judging this particular Defendant in this case based on any facts?”  She replied, “Yes.”  The prosecutor continued, “And because you are uncomfortable, you couldn’t sit in judgment of another person?”  She replied, “I guess it would depend on what the charge is.”

The trial court then granted the State’s challenge for cause.  Appellant objected to that ruling, stating, “She said she was uncomfortable and it would depend on the facts.  It depends on what she heard.  I object to the Court sustaining that challenge for cause.”

Discussion

Even assuming 
arguendo
 that the trial court in the case at bar abused its discretion in granting the State’s challenge for cause, this is no evidence that this error deprived Appellant of a lawfully constituted jury.  
See Jones v. State
, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998), 
cert. denied
, 528 U.S. 985 (1999).  We disregard trial court error in granting a State’s challenge for cause unless it affected Appellant’s substantial rights.  
See
 
Tex. R. App. P.
 44.2(b); 
Jones
, 982 S.W.2d at 391-92; 
Moore v. State
, 54 S.W.3d 529, 538 (Tex. App.—Fort Worth 2001, pet. ref’d).  The trial court’s erroneous ruling excusing a veniremember will call for reversal only if the error deprived the defendant of a lawfully constituted jury.  
Jones
, 982 S.W.2d at 394.  That is, a defendant has no right, constitutional or statutory, to have a particular individual serve on his jury.  
Id.
 at 393; 
Moore
, 54 S.W.3d at 538.  A defendant’s rights are affected by those veniremembers who actually serve on the jury, not by those who are excused from service.  
Moore,
 54 S.W.3d at 538.  A defendant’s only substantial right in this context, therefore, is that the jurors who do serve be qualified.  
Jones
, 982 S.W.2d at 393.

Thus, an appellant must argue and the record must demonstrate that the error deprived him of a fair and impartial jury.  
Salazar v. State, 
38 S.W.3d 141, 153 (Tex. Crim. App.), 
cert. denied,
 534 U.S. 855 (2001); 
Ladd
, 3 S.W.3d at 562; 
Brooks v. State
, 990 S.W.2d 278, 289 (Tex. Crim. App. 2001), 
cert. denied
, 528 U.S. 956 (1999)
.  If the jurors who serve are qualified, then the jury is lawfully constituted, a defendant’s substantial rights are not affected, and reversal of a defendant’s conviction based on trial court error in erroneously granting the State’s challenge for cause is not required.  
Moore
, 54 S.W.3d at 538.

The record in the instant case does not show that the granting of the challenge for cause as to veniremember Elmore deprived Appellant of a lawfully constituted jury.  There is no indication that the jurors who actually served at Appellant’s trial were biased, interested, or otherwise disqualified from serving on the jury. 
 Therefore, we overrule Appellant’s first point.  
See Feldman,
 71 S.W.3d at 749 (holding that even assuming the trial court erred in granting State’s challenge for cause, appellant did not show the error deprived him of a lawfully constituted jury).

CONCLUSION
 

Having overruled both of Appellant’s points, we affirm the judgment of the trial court.

PER CURIAM

PANEL F:  HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 31, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.