

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00045-CR

DONALD DWAYNE GRAVES                 APPELLANT

V.

THE STATE OF TEXAS                    STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1445831D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Donald Dwayne Graves appeals from his conviction for the first-degree felony offense of aggravated assault and from the resulting life sentence. *See* Tex. Penal Code Ann. § 22.02(b)(1) (West 2011). He argues that he is entitled to a new trial based on the gross disproportionality of his sentence as

---

[1]*See* Tex. R. App. P. 47.4.

compared to the offense and based on a jury-charge error. Finding no reversible error, we affirm the trial court's judgment.

## I.    BACKGROUND

Graves and Debra Ransom went to high school together and reconnected years later. Graves moved to Texas and lived with Ransom, and the two became engaged. On the morning of February 20, 2016, Graves got out of bed, went to the bathroom, and returned to the bedroom with a handgun. He pointed the gun at Ransom and told her that he was going to shoot her. Thinking he was joking, Ransom told him to put the gun away. Graves responded, "Are you just going to sit there, or are you going to call 911?" Ransom then called 911. The call was answered by her daughter, who worked as a 911 dispatcher. Ransom's daughter instructed her to walk to the front door of her home and unlock it. After following her daughter's instructions, Ransom attempted to reason with Graves, but he shot her in the left cheekbone from approximately six feet away. Graves then shot himself in the head. He and Ransom were rushed to the hospital; both lived.

As a result of the shooting, however, Ransom's teeth were shattered, she had blood on her brain, and she also sustained a broken left jawbone, broken bones in her neck, lung bruising, and severe damage to her vertebral artery. She has since experienced difficulty using the bathroom on her own, standing and walking without assistance, feeding herself, and cutting her own food. She also suffers from hallucinations.

2

At trial, a jury found Graves guilty of aggravated assault. During sentencing, the trial court instructed the jury on the possible effects of good-conduct time and parole on Graves's sentence:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the Defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this Defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp. 2017).

The jury assessed a life sentence. Graves now appeals and contends that the sentence is grossly disproportionate to his offense. He also asserts that the instruction regarding good-conduct time and parole was harmful error.

## II.    DISPROPORTIONATE SENTENCING

In Graves's first point, he argues that the sentence assessed by the jury is grossly disproportionate to the committed offense and, therefore, violates the Eighth Amendment's prohibition on cruel and unusual punishment. To preserve a complaint on appeal, the issue must be raised to the trial court "by a timely request, objection, or motion." Tex. R. App. P. 33.1(a); *see Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding constitutional rights can be forfeited if not properly raised). Graves did not raise this issue to the trial court at any point during sentencing. After the trial court imposed the sentence in open court, Graves had thirty days to file a motion for new trial but, instead, raises the issue for the first time on appeal. Tex. R. App. P. 21.4(a). He has, thereby, failed to preserve his complaint for our review. *See Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding sentencing complaint waived because defendant did not raise in motion for new trial).

But even if Graves had preserved his complaint, his sentence does not meet the exceedingly high threshold to be considered grossly disproportionate to his offense. When assessing the proportionality of a sentence, the court first considers the gravity of the offense compared with the harshness of the penalty. *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.–Fort Worth 2001, pet. ref'd). If

4

this comparison reveals that Graves's sentence is proportionate to the offense, we need not look any further. *Harmelin v. Michigan*, 501 U.S. 957, 960 (1991); *Moore*, 54 S.W.3d at 542. Generally, punishments assessed within statutory limits are proportionate and should be upheld. *See State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). Aggravated assault of a family member is a first-degree felony, punishable by imprisonment "for life or any term of not more than 99 years or less than 5 years." Tex. Penal Code Ann. § 12.32 (West 2011); *see id.* § 22.02(b)(1). Graves's punishment fits within the sentencing range allowed by statute. Furthermore, Graves aimed a loaded handgun at his girlfriend and shot her in the face, causing irreparable damage. Based on the facts, the sentence is neither excessive nor grossly disproportionate. *See Ory v. State*, No. 05-13-00172-CR, 2014 WL 3401714, at *1 (Tex. App.—Dallas July 10, 2014, no pet.) (mem. op., not designated for publication) (holding 48-year sentence for aggravated assault of a public servant was proportionate even though defendant had no prior criminal record, had a history of mental illness, did not always take his medications, and had the intent to assault the officer). We overrule point one.

## III. JURY CHARGE

In Graves's second point, he argues that the trial court violated his constitutional rights to due process and due course of law by including in the jury charge an instruction regarding good-conduct time and parole. The instructions regarding the possible effects of good-conduct time and parole on a defendant's

5

sentence are statutorily required even if they are inapplicable to a particular defendant. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a); *see also Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). The instructions do not violate a defendant's rights to due process or to due course of law. *Luquis*, 72 S.W.3d at 364–68. Therefore, the trial court did not err by including the instruction even though inapplicable to Graves. *See Sanders v. State*, 255 S.W.3d 754, 765–66 (Tex. App.—Fort Worth 2008, pet. ref'd). We overrule point two.

## IV.  CONCLUSION

Having overruled Graves's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  GABRIEL, KERR, and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 15, 2018

6