

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00182-CR
No. 02-18-00183-CR

_____

FRANCISCO ACOSTAVILLA, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court Nos. 1512308D, 1512310D

Before Sudderth, C.J.; Gabriel and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Francisco Acostavilla appeals his three-year, concurrent sentences imposed by the trial court after he pleaded guilty to the assault of a public servant and obstruction or retaliation. In one point, Acostavilla argues that the trial court's sentences are grossly disproportionate to his admitted conduct and that the sentences constitute cruel and unusual punishment. We will affirm.

## II. BACKGROUND

Without the benefit of a sentencing or charge bargain, Acostavilla pleaded guilty to the indicted charges of assault on a public official and obstruction or retaliation. After entering his pleas, the trial court ordered the preparation of a presentencing investigation report (PSI). After the PSI was prepared, the trial court held a sentencing hearing.

At the hearing, Officer Timothy Barton of the Haltom City Police Department testified that at roughly 11:30 p.m., on a 2017 September night, he received a dispatch regarding a disturbance. Specifically, Barton said that he and a fellow officer responded to a disturbance call wherein the complainant had said that someone was following him in a vehicle. According to Barton, the complainant drove himself to the police station where he encountered Barton and his partner. Barton said that after making contact with them, the complainant pointed out a vehicle that he believed had

2

been "chasing" him. From there, the two officers went to inspect the vehicle. Because the vehicle was in a dark area, Barton and his partner used flashlights.

As they were examining the vehicle, Barton said that he heard the sound of "a door opening" coming from the house across the street. When Barton and his partner looked to see what had caused the sound, they saw a man matching the description of the man that the complainant had given—Barton identified the man in court as Acostavilla. Barton said that shortly after he and his partner saw him, Acostavilla began to run toward them. Barton said that he drew his service weapon and ordered Acostavilla to his knees. According to Barton, Acostavilla did not initially comply and instead "started to act like he wanted to back away."

Barton said that Acostavilla did eventually drop to his knees, but he also acted as though he was going to get up. Barton said that because Acostavilla was not doing what he and his partner had ordered, they grabbed Acostavilla—Barton grabbed one arm and his partner grabbed the other. After a short struggle, Barton said that they were able to pin Acostavilla on his stomach and that Acostavilla began to complain of stomach pain. Barton responded by telling Acostavilla that they were not trying to hurt him and that he needed to lie on the ground and stop resisting detention.

Despite Barton's urging, Acostavilla still actively attempted to pull away from the officers. From there, a third officer arrived and assisted detaining Acostavilla. Eventually, officers were able to handcuff him. At that time, by Barton's account, other people started to exit the house that Acostavilla had come from.

As another officer tended the new arrivals, Barton said that Acostavilla "reached his head up and bit [Barton] on the right side of [his] arm." Barton described the bite as painful, and he said that he became concerned that Acostavilla might have transmitted a virus or disease to him. Shortly after, Barton and the other two officers were able to place Acostavilla in a squad car. Barton described Acostavilla as still resisting at that time, and he said that Acostavilla threatened him "nonstop." Specifically, Acostavilla said that when he "got out" he was going to harm Barton. Barton said that Acostavilla's threats were directed at him and not the other officers and that Acostavilla appeared to be reading Barton's name tag as he repeated Barton's name during the threats.

In order to placate his concern of possible infection, Barton said that he had emergency personnel inspect the bite wound. Barton said he was relieved to learn that Acostavilla's bite had not broken the skin.

Brenda Saline Lopez, Acostavilla's wife, testified on Acostavilla's behalf. Lopez said that she was one of the people who came out of the house on the night Acostavilla was detained. According to Lopez, the officers were "on top of [Acostavilla], and they wouldn't let him go." She said that she pleaded with the officers to let Acostavilla go because he had recently undergone surgery for a self-inflicted gunshot wound—a gunshot wound that Acostavilla initially reported to police had been caused by someone else. Lopez also contended that one of the

4

officers had "hit" Acostavilla as they were apprehending him, but she said she did not see exactly where the officer ostensibly struck him.

By Lopez's account, Acostavilla had gone outside that night to check on his vehicle because the couple had been receiving threats, they were having problems with a certain individual, and Acostavilla feared that someone was interfering with his vehicle. Lopez acknowledged that Acostavilla had "missed a couple of call-ins" for urine analysis while on bond, but she said that his missed call-ins were due to Acostavilla having the wrong call-in number.

Lopez confirmed that Acostavilla had previously pleaded guilty in 2015 to shooting a man in another vehicle multiple times. She also asserted that in association with that charge, Acostavilla had his work release revoked because he had failed to show up to work. Lopez further acknowledged that Acostavilla had been convicted of marijuana possession in 2010 and for terroristic threat in 2011.

Celeste Cisneros, Lopez's mother, also testified on Acostavilla's behalf. Cisneros stated that she saw Acostavilla almost every day, that she believed that he would comply with any terms of community supervision that the court might impose, and that Acostavilla was remorseful about having bitten Barton.

Acostavilla testified at the punishment hearing as well. According to Acostavilla, he was remorseful that he had bitten Barton, but he averred that he bit Barton out of a reaction to the pain he was experiencing when the officers apprehended him. While acknowledging that he had failed to report for a handful of

call-ins and that he was behind on his bail fees, Acostavilla asked the trial court to place him on deferred adjudication community supervision. Acostavilla said that he would remain in compliance with any community-supervision parameters that the trial court might impose.

On cross-examination, Acostavilla stated that he could not recall that his past bonds had been held insufficient twice—once related to an aggravated assault charge and the other related to an assault causing bodily injury to a family member charge. Acostavilla did admit that his bond had been held insufficient three times regarding the present charges. Acostavilla also acknowledged that he had lied to a prior community-supervision officer about his marijuana use, and he acknowledged that he had tested positive for marijuana when he went to the hospital after accidently shooting himself. He also admitted that he had lied to police about who had shot him.

At the close of the hearing, the trial court sentenced Acostavilla to three years' confinement for both the assault-on-a-public-servant and the obstruction-or-retaliation charges, with the sentences to run concurrently. After the court entered judgment accordingly, Acostavilla filed a motion for new trial. In his motion, among other arguments, Acostavilla argued that the trial court's sentences were disproportionate "to the facts of the case" and that the sentences constituted cruel and unusual punishment, contravening both the Texas and the federal constitutions. The record reflects that Acostavilla timely presented the motion to the trial court but

that the trial court did not rule on the motion, leaving it to be overruled by operation of law.[1] This appeal followed.

## III. DISCUSSION

In one point, Acostavilla argues that the three-year sentences imposed by the trial court are grossly disproportionate to the facts of the two offenses he pleaded guilty to and that the sentences constitute cruel and unusual punishment. Acostavilla also appears to argue that the trial court reversibly erred by not placing him on deferred adjudication community supervision. We disagree.

## A. Federal law applies to Acostavilla's claims.

As a threshold matter, even though Acostavilla argues that both his State and federal rights have been violated, he does not argue that this state's constitutional provisions that he relies upon provide more or different protections than their federal counterparts. Thus, we will not directly address his Texas constitutional claims, and this opinion will be guided by federal law or Texas state cases applying federal law only. *See Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993) (holding that where defendant did not provide "argument or authority concerning the protection provided by [the] Texas Constitution or how that protection differs from the protection provided by the United States Constitution" the court would not address

---

[1]*See* Tex. R. App. P. 21.6, 21.8; *cf. Means v. State*, 347 S.W.3d 873, 874 (Tex. App.—Fort Worth 2011, no pet.) ("Because Appellant did not object to his sentences when they were imposed or present his motions for new trial to the trial court, he failed to preserve his sentencing complaints for appellate review.").

the Texas Constitutional claim); *Robinson v. State*, 851 S.W.2d 216, 222 n.4 (Tex. Crim. App. 1991) (reasoning that where defendant claimed violation of Texas Constitution but provided no independent argument or authority regarding its protection, court would not address it); *Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992) (declining to address defendant's claim that the Texas Constitution was violated where defendant offered no argument or authority as to the protection offered by the Texas Constitution or how that protection differed from the protection of the federal constitution).

**B.     The trial court's denial of community supervision is not appealable.**

In part of his sole point, Acostavilla seems to argue that the trial court reversibly erred by denying his request for deferred adjudication community supervision. The State contends that this is a non-appealable issue. We agree with the State.

It is well-settled in Texas that a trial judge has absolute and unreviewable discretion to refuse or grant community supervision when the trial is before the court and a motion for community supervision is filed. *Nelson v. State*, 573 S.W.2d 9, 12 (Tex. Crim. App. 1978) ("[T]he law is settled that the decision of whether or not to grant probation is absolutely within the discretion of the trial judge and that the decision not to grant probation is not appealable."); *Lopez v. State*, 556 S.W.2d 821, 823 (Tex. Crim. App. 1977) ("[W]hen the trial is before the court and a motion for probation is filed, the trial judge has the absolute and unreviewable discretion either to

8

refuse or to grant probation."). Thus, because it is a non-appealable issue, we overrule the portion of Acostavilla's sole point that seemingly argues that the trial court reversibly erred by not placing him on deferred adjudication community supervision.

## C. The sentences are neither disproportionate nor cruel and unusual.

In the remainder of his sole point, Acostavilla argues that the three-year sentences are grossly disproportionate and constitute cruel and unusual punishment. We disagree.

### 1. The sentences are not excessive.

Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment. *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.).

Here, Acostavilla pleaded guilty to assault on a public servant and obstruction or retaliation, both third-degree felonies. Tex. Penal Code Ann. §§ 12.34, 22.01, 36.06(c). Thus, Acostavilla faced sentences punishable in the ranges between two to ten years' incarceration. Additionally, there is no indication in the record that the trial court did not take into consideration any mitigating evidence introduced by Acostavilla at the punishment hearing. Therefore, based on the record, we hold that Acostavilla's sentences are not excessive in that they do not exceed the statutory limits.

**2.    The sentences are not grossly disproportionate to the offenses to which Acostavilla pleaded guilty.**

A narrow exception to the general rule that a sentence within the statutory limits is not excessive, cruel, or unusual is recognized when the sentence is grossly disproportionate to the offense. *Alvarez*, 63 S.W.3d at 580; *see Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also Harmelin v. Michigan*, 501 U.S. 957, 1004–05, 111 S. Ct. 2680, 2707 (1991) (Kennedy, J., concurring); *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S. Ct. 3001, 3010–11 (1983); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

Regarding this exception, the Supreme Court has identified three criteria (the *Solem* factors) to be used to evaluate the proportionality of a particular sentence. *Alvarez*, 63 S.W.3d at 580–81; *see Solem*, 463 U.S. at 292, 103 S. Ct. at 3011. They are (1) the gravity of the offense and the harshness of the punishment, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for the same offense in other jurisdictions. *Alvarez*, 63 S.W.3d at 581. In a proportionality analysis, we first make a threshold comparison of the gravity of the offense against the severity of the sentence. *Id.* We judge the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Id.* Only if we determine that the sentence is grossly disproportionate to the offense do we consider the remaining *Solem* factors. *Id.*

10

Here, the evidence shows that Acostavilla assaulted a police officer as multiple officers attempted to detain him. Indeed, Barton testified that Acostavilla initially acted as though he would flee; that he resisted two and then three officers' attempts to apprehend him; and that during a time when the officers were distracted by the introduction of others coming from the house Acostavilla had come from, Acostavilla bit Barton on the arm, causing him pain and alarm. Furthermore, Barton said that as he and his fellow officers were attempting to detain him, Acostavilla persistently declared to Barton that he was going to retaliate against him when he "got out." Additionally, the State introduced evidence at the punishment hearing that Acostavilla had previously been charged with assault on a family member and evading arrest. He also was previously convicted of possession of marijuana and terroristic threat. Moreover, the State introduced evidence that Acostavilla had failed to comply with terms of community supervision in the past. And it is noteworthy that the trial court's assessed punishments of three-year sentences for the assault-on-a-public servant and for the obstruction-or-retaliation charges are at the lower end of the possible punishment range.

Given the nature of these offenses and Acostavilla's past criminal history, we hold that his sentences are not grossly disproportionate to the offenses he pleaded guilty to, and thus we need not address the remaining two *Solem* factors. *See Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (declining to

11

address the remaining two *Solem* factors after holding that the sentence imposed was not grossly disproportionate to the offense).  We overrule Acostavilla's sole point.

## IV. CONCLUSION

Having overruled Acostavilla's sole point on appeal, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 6, 2019